**BANNER OIL & GAS CO. v. GORDON.***
(No. 9647.)

(Court of Civil Appeals of Texas. Fort Worth. June 11, 1921. On Appellee's Motion for Rehearing July 2, 1921. On Appellant's Motion for Rehearing Oct. 29, 1921.)

1. Joint-stock companies ⇐19—Charge defining agent's authority held too general in view of evidence.

In an action against a joint-stock association for breach of a contract made by the association's secretary, where there was evidence the secretary's authority was limited by the articles of association, as to which plaintiff was put on inquiry, and that all contracts should be executed in the name of its presi-dent, vice president, or board of trustees, a charge, in connection with special issues as to agency, that an agent was one who acts on behalf of another under an agreement express or implied, or one who undertakes to act for another, who, with knowledge of the facts, acquiesces therein, was too general, and likely to convey the idea that, if the secretary was the agent of the association for any purpose, his execution of the contract would bind the association.

2. Mines and minerals ⇐112(1)—General statute relating to liens does not apply to oil well drilling.

Rev. St. art. 5623, prescribing procedure to fix liens of laborers and materialmen on buildings, railroads, etc., does not give a lien to one who drills an oil well on the premises, and who is given a lien by Vernon's Ann. Civ. St. Supp. 1918, arts. 5639a–5639d.

3. Mines and minerals ⇐114—To serve a lien written contract to drill well must be recorded and itemized account filed.

In order to secure a lien for drilling an oil well given by Vernon's Ann. Civ. St. Supp. 1918, arts. 5639a–5639d, which requires the same proceedings as those required under Rev. St. tit. 86, c. 2, the contractor must comply with the provision of article 5622 of that chapter, requiring the written contract to be recorded, and an itemized statement of account under an oral claim to be filed.

4. Mines and minerals ⇐114—Affidavit of work under oral contract held not an "itemized account."

An account filed by an oil well driller to fix his lien claim, which merely stated it was for labor for specified number of days at stated rates and for material furnished, was not an itemized account within the meaning of the mechanic's lien statute.

5. Mines and minerals ⇐114—Written acknowledgment of debt does not cure failure of lien claimant to file itemized account.

The failure of a lien claimant to file the itemized account required by Rev. St. art. 5622, is not cured by a written acknowledgment by the owner's agent that the amount claimed is due.

6. Sequestration ⇐12—Description as property on oil lease is insufficient.

An affidavit for sequestration which described the property as five acres of land in the southeast corner of a designated block, together with all personal property situated thereon, did not describe the proper with such certainty that it might be identified as required by Rev. St. art. 7095, and was insufficient to support the writ.

On Appellee's Motion for Rehearing.

7. Joint-stock companies ⇐17—Minute of appointment of general manager unnecessary.

A showing by the minutes of a joint-stock association that its secretary had been appointed general manager was not necessary to make him such.

---

⇐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

235 S.W.—60　　　*Writ of error dismissed for want of jurisdiction February 8, 1922.

**8. Joint-stock companies ⬥17—Secretary-treasurer may also be general manager.**

The fact that an individual was one of the trustees of the joint-stock association and also its secretary and treasurer would be no legal obstacle to his appointment and service as general manager.

**9. Joint-stock companies ⬥18—Bound by contracts of general manager.**

Where the uncontroverted proof showed that the secretary-treasurer of a joint-stock association was its general manager and in exclusive charge of its oil leases at the time contracts were made by him for drilling on the leases, the association was bound by those contracts, though contracts made by him in his capacity as secretary and treasurer would not have been binding.

**10. Appeal and error ⬥1043(1)—Refusal to quash sequestration held cured by finding on damages.**

The erroneous refusal of the trial court to quash a writ of sequestration was cured where a special issue was submitted as to the damages caused by the sequestration, and the jury found there were no damages.

On Appellant's Motion for Rehearing.

**11. Appeal and error ⬥742(4)—Proposition agreement was without consideration held not germane to assignment.**

A proposition that an agreement to pay a well driller a stated sum for each day his rig was idle was without consideration is not germane to an assignment that it was error to refuse a peremptory instruction that defendant's agent had no legal authority to bind it by such agreement.

**12. Contracts ⬥54(1)—Leaving rig on premises is consideration for promise to pay for delay.**

Where a well driller left his rig upon defendant's premises at the request of defendant's manager, pending litigation, so as to be ready to drill as soon as the title was cleared, his compliance with that request was sufficient consideration to support the manager's subsequent agreement to pay a stipulated sum per day for the delay.

**13. Evidence ⬥158(27)—Parol evidence admissible to establish supplemental agreement.**

A parol agreement that an oil lessee should pay a well driller a stipulated sum per day for the time during which work was delayed by litigation, supplemental and subsequent to the written agreement for drilling the well, may be proved over the objection that it was violative of the best evidence rule.

**14. Appeal and error ⬥742(4)—Proposition evidence of oral contract was incompetent held not germane.**

A proposition that parol evidence of an agreement was incompetent is not germane to an assignment that the court erred in refusing a peremptory instruction because defendant's agent was not authorized to make such agreement.

**15. Mines and minerals ⬥109—Evidence held not to require submission of issue of drilling in workmanlike manner.**

In an action by a well driller against a lessee for the agreed price for drilling the well, evidence that after plaintiff ceased drilling others drilled deeper and found a greater quantity of oil was insufficient alone to require submission to the jury of an issue, requested by defendant, whether plaintiff had drilled the well in a workmanlike manner.

**16. Appeal and error ⬥930(3)—Issue not requested presumed to have been found to support judgment.**

Where the trial was upon special issues, and neither party requested the submission of a particular issue to the jury, a judgment in plaintiff's favor imports a finding by the trial judge on that issue favorably to plaintiff.

**17. Contracts ⬥303(5)—Driller ready to perform can recover at contract rate.**

A driller, who had set up his rig on defendant's premises under the orders of its general manager and was ready and willing to prosecute the work of drilling, is entitled to recover at the stipulated price per day, though he was prevented from drilling by litigation affecting defendant's title.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by George Gordon against the Banner Oil & Gas Company to recover damages for breach of contract. Judgment for plaintiff, and defendant appeals. Judgment reformed to eliminate therefrom the foreclosure of the lien claimed and affirmed in other respects.

Smoot & Smoot, of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellee.

DUNKLIN, J. George Gordon recovered a judgment against the Banner Oil & Gas Company for the sum of $15,417.50, from which the defendant has appealed.

Plaintiff's suit was for damages for the breach of two contracts alleged to have been made by and between him and the defendant, an unincorporated joint-stock association, acting by and through its agent, one H. A. Pagenkopf, for oil well drilling work to be done by plaintiff for the defendant, and also for $93 as the value of certain supplies used in said drilling operations and furnished by plaintiff at the instance and request of the defendant, acting through the same agent. Plaintiff also sought a foreclosure of an alleged statutory lien, upon the lease on which said drilling work was done and upon certain oil well supplies situated thereon, for the work he had done and material he had furnished in connection therewith. The written contract so pleaded and introduced in evidence on the trial is as follows:

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"This memorandum of agreement made and entered into this day by and between Banner Oil & Gas Company, a joint-stock association with limited liability as fully shown in the declaration of trust on file in the deed records of Wichita county, Texas, first party, and George Gordon, second party, witnesseth: That whereas the second party is the owner of a standard rig and drilling tools, and has contracted to drilling such wells as the first party shall desire, therefore to that end the following is agreed:

"1. That the first party is to employ the second party to do such drilling as is necessary to bring in its wells at the rate of $125.00 per day, payable on the 1st and 15th of each month.

"2. That the second party agrees to do such drilling in a careful and workmanlike manner, and to give his entire time and attention to the same during the time he is being so employed.

"3. That the first party is to furnish the necessary derrick, and other things necessary to standarize the rig, and the second party is to furnish all necessary tools, etc., labor and materials except water and fuel.

"4. Second party is to go on the work as soon as directed, and the pay of such second party is to commence as soon as he shall begin to rig up, at the direction of the first party.

"Witness our hands in duplicate this the 14th day of June, A. D. 1919.

          "Banner Oil & Gas Co.,
          "H. A. Pagenkopf, Sec.-Treas.
          "Geo. Gordon."

Plaintiff's petition contained these further allegations:

"That under the terms of said written agreement the plaintiff moved onto the lease belonging to the defendant on June 14, 1919, but was delayed in rigging up until August 9, 1919; that such delay was caused by the failure of the defendant to have its well in proper shape to be standardized and equipped with tools in accordance with the contract with plaintiff. That on the 9th of August, A. D. 1919, the said defendant ordered and directed the plaintiff to rig up.

"Plaintiff began rigging up on the 9th day of August, A. D. 1919, and under the terms of said written agreement worked with such standard rig 57 days, being from August 9, 1919, to October 4, 1919.

"That on or about the 4th day of October, A. D. 1919, plaintiff and defendant made and entered into an additional oral agreement, by the terms of which defendant employed plaintiff, in addition to the standard rig which he had on the said lease, to use a star machine for the purpose of drilling and swabbing the wells on said lease, and agreed to pay the plaintiff the sum of $200 per day for the use of said star rig and standard rig, that is, to pay plaintiff $200 per day for the use of both of said rigs. That thereafter, beginning on the 5th day of October A. D. 1919, the plaintiff worked and performed labor 34 days with both of his rigs, for which the said defendant promised to pay plaintiff the sum of $200 per day, that is, to give plaintiff $75 per day in addition to the $125 per day for the use of his star rig, which was performed from October 5, A. D. 1919, to November 6, 1919, inclusive.

"That as hereinbefore alleged the plaintiff moved on said lease, with his standard rig and tools, on June 14, 1919, but was delayed in rigging up until August 9, 1919, having such rig idle, waiting on said job, 56 days, and that said defendant agreed and promised to pay plaintiff the sum of $25 per day for the time said rig was idle.

The evidence introduced was sufficient to sustain findings that plaintiff entered into the alleged contract with H. A. Pagenkopf as the agent and representative of the defendant, and following are some of the special issues submitted to the jury with their findings thereon:

"By the term 'agent' is meant one who acts for and on behalf of another under agreement express or implied. One also becomes the agent of another who undertakes to act for and on behalf of said party, which party, with full knowledge of such facts and conduct, acquiesces in same, and holds out to the public, or third parties dealing with him, such person as being authorized to so act.

"Bearing in mind the above, you will answer the following questions:

"Special issue No. 1: Was H. A. Pagenkopf the agent of the Banner Oil & Gas Company at the time he made the written contract sued upon? Answer: Yes.

"Special Issue No. 2: Was H. A. Pagenkopf the agent of the Banner Oil & Gas Company at the time he made the oral agreement with the plaintiff to pay him $75 per day for star rig? Answer: Yes.

"Special Issue No. 3: Was H. A. Pagenkopf agent for the Banner Oil & Gas Company at the time he agreed to pay the plaintiff the sum of $25 per day for waiting to rig up? Answer: Yes.

"Special Issue No. 4: Was H. A. Pagenkopf the agent of the Banner Oil & Gas Company at the time he acknowledged in writing the indebtedness of plaintiff? Answer: Yes.

"(a) Did the trustees of the Banner Oil & Gas Company or the majority thereof have knowledge that H. A. Pagenkopf was assuming to act for the Banner Oil & Gas Company in the employment of the plaintiff? Answer: Yes.

"(b) Did the trustees of the Banner Oil & Gas Company or the majority thereof know that the said Gordon was employed on said lease at the time the said Gordon was performing the work thereon? Answer: Yes.

"(c) Did the said trustee of the Banner Oil & Gas Company, or the majority thereof, make any protest to George Gordon against the acts of the said H. A. Pagenkopf in so employing the said George Gordon? Answer: Yes."

The proof was uncontroverted that Pagenkopf was defendant's authorized representative for some purposes; but whether or not the making of said contracts was within the scope of his powers as such agent was a sharply controverted issue of fact. Pagenkopf testified that the only drilling done by plaintiff was with the star machine, and that that drilling was to a depth of only a few feet; that he was secretary and treas-

urer of the defendant association, and his whole authority to represent defendant was contained in its articles of association, and that he did not consult with any of the officers of the company before he signed the written contract sued on. There was evidence sufficient to put plaintiff on notice of the character of the association with whom he was dealing, and by defendant's articles of association, the management of its affairs was placed exclusively in its board of trustees, and specifically provided that the duties of the secretary and treasurer should be to keep its books and records and funds and sign certificates of stock with the president of the association, and render such other services as the board of trustees shall direct. By defendant's by-laws it was provided that all evidence of indebtedness of defendant should be countersigned by its president or vice president, and that all its authorized contracts undertaken in the course of its business should be executed in the name of the president, vice president, or board of trustees. Other officers of the company testified, in substance, that Pagenkopf had no authority from the company to make said contracts.

[1] In view of such evidence in connection with the further facts, as found by the jury, that defendant's trustees protested to plaintiff against the act of Pagenkopf in employing him, the language used by the trial judge, with reference to the question of Pagenkopf's agency to make the contracts sued on was too general, and was likely to impress the jury with the idea that, if Pagenkopf was defendant's agent for any purpose, that would authorize him to bind defendant by the contracts in controversy. The defendant, not only objected to the language so used, but requested instructions presenting specifically the issue whether or not Pagenkopf was authorized by the defendant to bind it by said contracts, which requested instructions were refused by the court. Willis v. Greiner, 26 S. W. 858.

[2, 3] In the affidavit filed by plaintiff for the purpose of fixing the statutory lien alleged, and which he prayed to be foreclosed, he stated that—

"Due notice has been given by affiant of the labor performed in accordance with article 5623 of the Revised Statutes of this state."

It has been decided that that article of the statutes did not give a lien for such labor as was performed by plaintiff in the present suit. See Barton v. Wichita River Oil Co., 187 S. W. 1043; Farmers' Elevator Co. v. Advance Thrasher Co., 189 S. W. 1018. But by articles 5639a to 5639d, inclusive, enacted February 13, 1917, a lien is provided to secure payment for such work, and the proceedings required to fix such a lien under that act, as well as under article 5623, are the same as those required under title 86,

chapter 2, relating to liens for labor performed on buildings and railroads, to which reference is specifically made in those statutes. However, article 5622, which is one of the articles referred to, reads as follows:

"In order to fix and secure the lien herein provided for, it shall be the duty of every original contractor, within four months, and every journeyman, day-laborer or other person seeking to obtain the benefits of the provisions of this law, within thirty days after the indebtedness shall have accrued, to file his or their contract in the office of the county clerk of the county in which such property is situated, and cause the same to be recorded in a book to be kept by the county clerk for that purpose; provided, that, if such journeyman, day-laborer or other persons have no written contract, it shall be sufficient for them to file an itemized account of their claim, supported by affidavit, showing that the account is just and correct, and that all just and lawful offsets, payments and credits known to the affiant have been allowed."

[4] Since the written contract was not filed for record, as required by that statute, no lien was fixed for the amount claimed under that contract. And as the affidavit filed did not properly itemize the account for labor performed under the oral contract nor the amount claimed for material furnished, no lien was fixed for the amount claimed for that work or material. That part of the account stating the claim made reads:

"For labor and material furnished as follows: To 90 days' work from $125.00 to $200.00 per day and 56 days waiting on said job by contract at $25.00 per day, and for material furnished, $15,417.00."

[5] Clearly that statement does not constitute an "itemized account" within the meaning of the statute. Nor did the written acknowledgment of the debt claimed, made by Pagenkopf after the work was done, cure the defect, even if he was duly authorized by defendant to execute the same. A compliance with the statute was necessary in order to fix the lien claimed, and, since plaintiff failed to comply with it, the court erred in decreeing and foreclosing such a lien. Meyers v. Wood, 95 Tex. 67, 65 S. W. 174; Lyon v. Elser, 72 Tex. 304, 12 S. W. 177; Lyon & Gribble v. Ozee, 66 Tex. 95, 17 S. W. 405.

It is unnecessary to determine whether or not the affidavit filed by plaintiff to fix a lien was sufficient to fix a lien under the new statutes (articles 5639a to 5639d) in view of the fact that it made no reference thereto, but apparently indicated an intention on the part of the plaintiff to claim a lien only under article 5623, since, as shown above, plaintiff did not comply with the requirements of the new statutes.

[6] We are of the opinion further that the trial court erred in overruling defendant's motion to quash the writ of sequestration

which was sued out by plaintiff and levied on the property upon which the lien was claimed, for lack of a proper statutory affidavit as a predicate therefor. The affidavit failed to describe either the lease or the personal property sought to be sequestered with that degree of certainty which is required by article 7095, V. S. Tex. Civ. Statutes. The property sought to be sequestered is described in the affidavit as follows:

"Being five acres of land in the southeast corner of block 86, northwest division of Wichita county, Texas, together with all personal property situated thereon."

Article 7095 of the statutes reads:

"No sequestration shall issue in any cause until the party applying therefor shall file an affidavit in writing stating: * * *

"3. The property to be sequestered shall be described with such certainty that it may be identified and distinguished from property of a like kind, giving the value of each article of the property and the county in which the same is situated."

For the reasons noted, the judgment of the trial court is reversed, and the cause is remanded.

### On Appellee's Motion for Rehearing.

[7, 8] Our attention has been called to the fact, which was established by uncontroverted proof, that H. A. Pagenkopf was the general manager of the Banner Oil & Gas Company at the time he made the contracts in controversy with George Gordon. While the testimony showed that there was no showing on the minutes of the company that Pagenkopf was appointed general manager, such a showing was not necessary to make him such. And although by the articles of association Pagenkopf, who was one of the trustees of the association, was named as secretary and treasurer, and his powers were restricted to the duties of that appointment, that fact would be no legal obstacle to his appointment and service as general manager also. The proof further showed that at the time the contracts were made the other trustees of the association knew that Pagenkopf was acting as general manager and in sole charge of the lease, and not only did not object to his service in that capacity, but acquiesced therein. And on January 7, 1920, the trustees, in regular session, passed a resolution by unanimous vote, which was entered on the minutes of the association, reciting:

"That the services of H. A. Pagenkopf, as general manager, be discontinued at once, there being no further necessity for the services of a general manager, since the company disposed of its holdings and has arranged for the services of a gauger; that the salary of the said H. A. Pagenkopf continue, however, until the 12th day of February, 1920, at which time they shall be discontinued."

The evidence further shows conclusively that the protest which was made by the other trustees against the acts of H. A. Pagenkopf in employing George Gordon, as found by the jury, was not made until after Pagenkopf, acting for defendant, had entered into the contracts in controversy with Gordon.

[9] Since H. A. Pagenkopf was the general manager of the defendant company and in exclusive charge of its leasehold interests at the time the alleged contracts were made by him for the company, it follows that the defendant was bound by those contracts, because the authority to act as general manager necessarily included the power to make them in the name of and for the company. Booker-Jones Oil Co. v. National Refining Co., 63 Tex. Civ. App. 142, 132 S. W. 815; Cuero Packing Co. v. Alamo Mfg. Co., 194 S. W. 494.

[10] The failure of the court to quash the writ of sequestration was harmless error, in view of the fact that the court did submit the issue of damages claimed by the defendant for wrongfully suing out that writ, and the jury found that defendant sustained no damages by reason of its levy. But we adhere to our conclusion reached on original hearing that no statutory lien was fixed by plaintiff, for the reasons stated in our original opinion.

Accordingly, the judgment of the trial court is so reformed as to eliminate therefrom the foreclosure of the lien alleged, and judgment is here rendered, denying plaintiff that relief, but in all other respects the judgment is affirmed. And our former judgment reversing the judgment of the trial court in its entirety and remanding the cause for another trial, is set aside.

### On Appellant's Motion for Rehearing.

Appellant insists upon a discussion of several assignments of error presented in its original briefs, which were heretofore duly considered and overruled without a discussion of them, as we deemed that unnecessary.

[11-14] One of those assignments was addressed to the refusal of a requested peremptory instruction that Pagenkopf had no legal authority from the defendant company to bind it by the contract to pay Gordon $25 per day for the 56 days he waited to rig up his machine after he had moved on the lease. Our conclusion, already expressed, that his authority to make such an agreement was conclusively established by the evidence is an answer to that assignment. The proposition submitted under that assignment that the agreement was without consideration is not germane to the assignment, although it is presented under another assignment to the judgment. Furthermore, there was proof to show a sufficient consideration in the testimony of Pagenkopf to the effect that Gordon moved his rig on the lease when

directed to do so by Pagenkopf; that the delay in rigging up was due to no fault of Gordon, but to litigation against defendant company by others; that Gordon was proposing to move to another lease, where he was' offered drilling work and was prevailed on by( Pagankopf to remain, as the latter was daily expecting the well to be ready for Gordon's' work to begin, and that in obedience to that request Gordon remained. The fact that Pagenkopf did not agree to pay $25 per day for the delay until after the delay had occurred did not show that the promise was without consideration, since a sufficient consideration had already passed. After moving on the lease at Pagenkopf's request, certainly Gordon was not required, under his contract, to wait indefinitely and for an unreasonable length of time to rig up his machine and begin drilling. The parol contract to pay $25 per day for the delay in starting work was subsequent and supplemental to the written contract sued on, and hence proof ox it was not subject to the objection that it was violative of the best evidence rule,' as contended in another proposition submit-' ted under the assignment now under discus-' sion, although that proposition likewise clearly is not germane to the assignment. 6 R. C. L. p. 674, par. 82.

Several other assignments are presented to the failure of the court to submit to the jury issues of Pagenkopf's agency to make the different contracts sued on. There is no merit in any of those assignments, since those issues were submitted, and the jury returned findings thereon favorable to the plaintiff.

[15] There was no error in refusing to submit the requested issue whether or not Gordon drilled the well on defendant's lease in a skillful and workmanlike manner, since there was no evidence to show that he failed to do so. The testimony urged by appellant, to the effect that after plaintiff had drilled a short distance into the sand and the well had produced 20 barrels per day, other drillers drilled it deeper and found a greater quantity of oil, did not tend to prove that the work performed by Gordon was done in an unskillful manner. In fact, there was no contention that defendant demanded that the well be drilled deeper.

[16] Complaint is made of the refusal of the court to submit two special issues requested by appellant, one being whether or not Gordon worked with the standard rig on the lease from August 9, 1919, to October 4, 1919, as alleged in plaintiff's petition; and the other being whether or not Gordon worked and performed labor with both of his rigs on the lease from October 5, to November 6, 1919, as alleged in plaintiff's petition. The proof was uncontroverted that plaintiff did not perform actual work with the two rigs during the entire periods mentioned in those issues; and, if those were controlling

issues, appellant was entitled to a peremptory instruction thereon for findings in accordance with the uncontroverted proof. It is true that plaintiff did allege the performance of work with two rigs, as stated in the two requested instructions; but the following facts were established by the uncontradicted testimony of both plaintiff and Pagenkopf: In obedience to Pagenkopf's instructions, plaintiff moved his rig on the lease June 14, 1919. One Goldman was then working on a well on that lease and had drilled it to a considerable depth, but the same had not been finished, and Pagenkopf's purpose in employing plaintiff was to have him finish that well as soon as he could get Goldman to move off. Drillers were hard to find in that field, and it was Pagenkopf's desire and intention to make sure of plaintiff's services as soon as Goldman should leave the well and give plaintiff an opportunity to rig up his machine and begin work. While plaintiff was waiting to do the work he had offers from other persons to do drilling on other leases. He informed Pagenkopf of these offers and of his desire to accept same, but at Pagenkopf's solicitation he was induced to wait on Goldman for the full period of 56 days, after the termination of which period Goldman moved off the lease. Immediately thereafter plaintiff moved his standard rig to the well, and upon Pagenkopf's order began to rig up, preparatory for drilling work, employing the services of several men in order to do so. But he never finished rigging up on account of certain litigation which had been instituted against the defendant by others, and for which he was in no manner responsible. That litigation was the only reason for his failure to finish rigging up the standard machine and proceeding to drill with it. Notwithstanding that delay he, with his employés, to whom he paid high wages, was kept on the lease at the request of Pagenkopf, who later decided to use a star drilling machine, and, in order to induce plaintiff to purchase and use one, agreed to pay him $75 per day for the use of it, in addition to $125 per day for the standard machine. During that period defendant was endeavoring to sell the lease, and had procured a prospective purchaser, who had agreed to pay several hundred thousand dollars for it, and the chances to sell would be increased if the well proved to be a good producer. When the star rig was engaged, one Miller had agreed to purchase the lease from defendant, and he joined Pagenkopf in making the contract for use of that rig, but his contract of purchase was abandoned by him, and he had nothing further to do with the lease of the drilling operations, which were solely under active control and management of Pagenkopf for the defendant. Under such circumstances, the findings of fact sought by defendant by the two requested instructions mentioned

above would not have defeated plaintiff's suit under the contracts alleged and proved.

In addition to the facts recited above, after the employment of plaintiff had terminated, Pagenkopf, as the representative of defendant company, gave to plaintiff a written statement, acknowledging defendant's indebtedness to him for the full amount claimed in the suit, on the claims herein asserted.

[16] The trial having been upon special issues submitted to the jury, and there being an absence of any finding by the jury that plaintiff complied with his obligations under the contracts sued on, and both parties having failed to request the submission of that issue to the jury, the judgment rendered in plaintiff's favor necessarily imports a finding by the trial judge that he discharged the obligations assumed by him by the contracts sued on in a manner satisfactory to the defendant. And appellant has presented no specific assignment of error to that finding of fact.

[17] Furthermore, the facts recited above, showing partial performance by plaintiff of his drilling contracts, his tender of full performance, with ability and readiness to make good the tender, and the reasons why he failed to specifically and fully perform them, and the acceptance by defendant's general manager and agent of the tender and services rendered as a full satisfaction of plaintiff's obligations, were all established by uncontroverted proof, and under such circumstances it conclusively appears that plaintiff was entitled to recover the contract prices for said work. 9 Cyc. 646, 688; 1 Williston on Contracts, 677, 687, 688.

Appellant's motion for rehearing is overruled.