## HOWE et al. v. WICHITA STATE BANK & TRUST CO. et al. (No. 9992.)

(Court of Civil Appeals of Texas. Fort Worth. June 3, 1922. Rehearing Denied June 24, 1922.)

**1. Pleading ⟨key⟩15—Adoption of allegations in other pleadings equivalent to separate allegations.**

Where several suits against joint-stock companies and their stockholders were consolidated, an objection by one defendant that one plaintiff did not allege that this defendant was a stockholder in one of defendant's stock companies was not valid where such plaintiff had formally adopted the allegations contained in several paragraphs of another plaintiff's petition, in which there was such an allegation, thus making these allegations, so far as relevant, the allegations of this plaintiff.

**2. Joint-stock companies and business trusts ⟨key⟩18—Bound by notes and trust deed executed by general manager.**

Where the secretary-treasurer of a joint-stock association was also its general manager, the other officers being nonresidents, he was authorized to execute a note and trust deed binding on the association for supplies necessary in conducting the association's business, notwithstanding that he was not authorized to execute notes and trust deeds for the association under the articles of the association.

**3. Joint-stock companies and business trusts ⟨key⟩15(1)—Trust agreement giving control to shareholders imposed individual liability.**

Where the articles of association are in the form of a declaration of trust giving full control to the stockholders, under Vernon's Sayles' Ann. Civ. St. 1914, art. 6153, imposing individual liability on stockholders of unincorporated associations, the stockholders and trustees were individually liable for association's debts.

**4. Parties ⟨key⟩40(4)—Trial court held not to abuse discretion in allowing intervention and amendment of pleadings during trial.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1824, authorizing amendments to pleadings during trial, there was no abuse of trial court's discretion in allowing creditors originally presenting claim against only one of two joint-stock associations, to intervene during trial of an action against both associations and amend their pleadings so as to allege liability on the part of both associations, where the officers of both associations were the same and plaintiffs were creditors presenting similar claims, there being no evidence of surprise or probability that a different result would be reached in another trial.

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Landlord and tenant ⬉══242—In absence of statute or contract, landlord has no lien.**

The lessor of premises used as an oil pumping station by lessee has no lien on lessee's property for rent, Vernon's Sayles' Ann. Civ. St. 1914, arts. 5475–5491, imposing landlord's liens in certain cases, not applying, as a landlord has no lien in the absence of a statute or a contract granting a lien.

**6. Joint-stock companies and business trusts ⬉══20—Lien given to officer and stockholder by joint-stock association held valid against creditor.**

A lien granted by a joint-stock association to an officer and stockholder was valid as against a complaining creditor where there was no showing of unfairness, or that any objection was made by the association or its officers, especially since complaining creditor recognized and contracted with reference to this lien.

**7. Trusts ⬉══283(1)—Transactions between trustee and beneficiary scrutinized closely, and set aside if unfair.**

Transactions between trustee and beneficiary are scrutinized closely, and, where it appears that trustee has acted in bad faith, or been guilty of concealment, the transaction will be set aside.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by the Wichita State Bank & Trust Company and others against J. P. Howe, H. C. Meier, and others. From a judgment for plaintiffs, the named defendants appeal. Affirmed as modified.

Melville E. Peters, of Wichita Falls, for appellants.

Bonner, Bonner & Sanford and Kay, Akin & Kenley, all of Wichita Falls, for appellees.

CONNER, C. J. The history of the controversy now presented to us begins with the institution of a suit on August 10, 1920, by J. M. Lawrence and others in the Seventeenth district court of Tarrant county, Tex., against the New-Tex Refining Company, alleged to be a joint-stock association of Wichita county, Tex., for the foreclosure of a mortgage or deed of trust lien dated March 5, 1920, to secure the principal sum of $16,-000. Among other things, pursuant to the prayer of the plaintiffs, a receiver was appointed who, as such, took possession not only of the property of the defendant, the New-Tex Refining Company, hereinafter referred to as Refining Company, but also took possession of a certain pipe line, tanks, loading rack, and other property belonging to the New-Tex Pipe Line Company, hereinafter referred as the Pipe Line Company, this property also being situated in Wichita county, Tex. .

On January 11, 1921, the case referred to in Tarrant county was transferred to the district court of Wichita county, Tex., and there consolidated with a suit that had theretofore been instituted by the Wichita Bank & Trust Company, hereinafter referred to as the bank, against the New-Tex Refining Company, wherein the bank sought to recover upon an indebtedness with the foreclosure of a mortgage alleged to have been given the bank by the Refining Company to secure the sum of $32,000, and covering the refinery and other property described in the mortgage given by the Refining Company to J. M. Lawrence and others on March 24, 1921. The Pipe Line Company filed its plea of intervention in the consolidated suit, alleging and claiming ownership of property seized by the receiver.

During the pendency of the actions above referred to, the Keystone Pipe & Supply Company, hereinafter referred to as Supply Company, filed a suit against the Refining Company and the Pipe Line Company and F. C. Milbury, H. D. Frankfurt, J. P. Howe, H. C. Meier, Wichita State Bank & Trust Company, and J. M. Lawrence and associates, seeking to recover upon a described note and trust deed given by the Pipe Line Company and the Refining Company, amounting to $9,034, and alleging that the Refining and Pipe Line Companies were stock associations, that J. P. Howe and H. C. Meier were trustees and stockholders in the two companies, and hence liable to the Supply Company individually, it being alleged that Howe and Meier had been served or had appeared in the case personally, and also asserted, as against the bank, Lawrence, and others, priority of its lien to a certain extent. This suit of the Supply Company's was transferred from the district court in which it had been instituted to the district court in which the consolidated suits hereinbefore mentioned were pending, and there also consolidated with the other consolidated suits.

J. P. Howe and H. C. Meier answered in the consolidated suits with demurrers and a general denial, and Howe presented a plea for recovery upon a certain note and mortgage that had been given by the executive officers of the Pipe Line Company upon its property to secure Howe in the sum of something over $100,000. Some 17 or 18 other firms, associations, and individuals, some of whom are to be hereinafter named, also intervened in the suit, severally presenting claims for materials furnished or other indebtedness of the Refining Company, the particulars of which need not at this point be stated.

During the pendency of the proceedings above noted, the receiver under proper orders sold all of the property of the Refining and Pipe Line Companies, and deposited the proceeds subject to disposition by the court. Such other of the pleadings and circumstances as may be necessary to an understand-

ing of our disposition of the case will be stated in connection with the questions discussed.

The case was tried before the court without a jury, and resulted in a judgment which is long and intricate, disposing, as it does, of the several asserted rights of the main litigants and of the interveners in fixing amounts, priority of liens, etc., but, inasmuch as the defendants J. P. Howe and H. C. Meier alone appeal and complain of the judgment, and inasmuch as but two of the parties made appellees appear in this court by brief, we will only note such particulars of the judgment as is pertinent to the questions presented by the parties litigant now before us.

In substance, among other things, the judgment recites that the Refining Company and Pipe Line Company were separate associations and entities, and that as such each was distinctly and severally liable to its respective creditors and to those in whose favor a decree was made. As against the Refining Company and as against J. P. Howe and H. C. Meier, personally, the bank was awarded a judgment of $35,980.50 with a foreclosure of its deed of trust lien on the assets and properties of the Refining Company, it being further decreed that, to the extent of $17,710.50, the bank was entitled as against J. P. Howe to participate in the funds derived from the sale of the assets of the Pipe Line Company. It is further decreed that Howe recover of the Pipe Line Company the sum of $121,448.88, and have foreclosure of his asserted lien on the assets of the Pipe Line Company, making it, however, subordinate to the judgment and lien in favor of the intervener Mrs. Lillis Morgan for $300 and the National Tank & Steel Company for $530. The decree further provided that the appellee Supply Company should recover of the Refining Company and of the Pipe Line Company and of appellants Howe and Meier the sum of $10,758.88, with a foreclosure of a fourth lien against the properties and assets of the Pipe Line Company. Seven named interveners were severally given judgment in amounts aggregating $2,115.30 against appellants Howe and Meier, with the right to participate in the proceeds due Howe under his lien against the properties of the Pipe Line Company.

The case is submitted to us upon 60 assignments of error, supported by 17 separate propositions which we will endeavor to dispose of as briefly as we can.

[1] Under appellants' first proposition, it is insisted, in substance, that the personal judgment against Howe in favor of the appellee Supply Company is erroneous, in that there is no allegation in the petition of the Supply Company that appellant Howe is either a stockholder or a copartner in the Pipe Line Company, and no allegation from which it can be determined what relation Howe sustained or at any time had in connection with the note and trust deed upon which the Supply Company sought recovery. We find, however, that the Supply Company alleged, among other things, that the Pipe Line Company was an unincorporated joint-stock association and copartnership; that the Pipe Line Company, through its managing officer, executed the note declared upon, and formally adopted paragraphs 5 and 6 of the plaintiff bank's first supplemental petition, which, among other things, distinctly alleged "that said J. P. Howe is a stockholder, director and officer in the New-Tex Pipe Line Company." The particular grounds, therefore, upon which appellants' said proposition is based fails, and with it must fall the proposition, for we think it must be conceded that the formal adoption of the paragraph in which the necessary allegation appears made the pleading, so far as relevant, the pleading of the appellee Supply Company.

[2] Under appellants' second, fifth, seventh, eighth, ninth, and tenth propositions, it is insisted that the court erred in admitting in evidence, over the objection of appellants, the note and trust deed of the Pipe Line Company, upon which the Supply Company declared:

First, for the reason that:

"No testimony or other evidence was submitted or offered by plaintiff to identify either the purported promissory note or the purported trust deed offered in evidence as the ones mentioned and described in the pleadings, and no testimony or other evidence was submitted to identify or prove the purported signature or any of them upon the note and trust deed or either of them as the signature or name of the defendant, New-Tex Pipe Line Company, and no testimony or other evidence was submitted or offered to identify or prove the purported signature of H. D. Frankfurt, whose name is purported to be signed to said note and trust deed, and underneath whose purported signatures are the words 'Secretary-Treasurer.'"

And, second, because it was not shown that the note and trust deed had been executed by a person with power and authority from the Pipe Line Company to so execute. As shown by bill of exception No. 1, the note and trust deed were objected to for the reason:

"That it is offered by the Keystone Pipe and Supply Company as evidence of an obligation and indebtedness against the New-Tex Pipe Line Company and J. P. Howe and H. C. Meier, and in truth and in fact it is not the promissory note of the New-Tex Pipe Line Company, and for the reason that it is not signed by any person authorized to execute promissory notes under the Declaration of Trust and Articles of Association of the New-Tex Pipe Line Company, and is not an indebtedness of the New-Tex Pipe Line Company, or of interveners J.

P. Howe and H. C. Meier, as officers and stockholders of the New-Tex Pipe Line Company."

The grounds of objection to the note and trust deed, as stated in the bill, were substantially as stated in a verified answer of appellants in defending against those instruments. We have had some difficulty in disposing of the questions so presented, but have finally concluded that the objections must be overruled. It is true that appellees have not pointed out any testimony on the part of any witness, and we have found none, which in express terms declared that H. D. Frankfurt, whose name purports to have been signed to the instruments objected to, in fact did so. But, as we construe the record as a whole, there was no real contention that H. D. Frankfurt did not sign the note and trust deed, or that the note and trust deed offered in evidence was some note or trust deed other than those declared upon by the Supply Company. The real objection seems to have been that H. D. Frankfurt, who was admittedly an officer of the Pipe Line Company, had no authority under the articles of that association to execute such an instrument. To illustrate: In appellant Howe's answer to an amended pleading setting up a materialman's lien in favor of the Supply Company, claimed in addition to the note and trust deed declared upon, it is said:

"If, as a matter of fact, the plaintiff did have a materialman's lien covering said property as described and alleged in plaintiff's petition, it appears and is alleged by the plaintiff in its said petition that on, to wit, the 18th day of June, 1920, the plaintiff accepted from the defendants the New-Tex Refining Company and the New-Tex Pipe Line Company a deed of trust, which deed of trust was recorded on July 9, 1920, in the deed records of Wichita county, Tex., in Book ——, at page ——, and in which the plaintiff therein was named as beneficiary as to the indebtedness therein mentioned, and for which said trust deed was given by said defendants and accepted by said plaintiff, as beneficiary, to secure, * * * that by the taking and acceptance of said mortgage and trust deed the plaintiff intended to and did expressly waive any contractor's or materialman's lien."

In the same answer, after denying indebtedness to the Supply Company for the material furnished, or upon the note and trust deed, it is alleged:

"On or about the 18th day of June, A. D. 1920, that one H. D. Frankfurt, claiming to be the secretary and treasurer of the New-Tex Pipe Line Company, wrongfully, and without any right or authority, executed and delivered to the plaintiff a promissory note and trust deed, to which promissory note and trust deed the said H. D. Frankfurt, claiming to be the secretary and treasurer of the New-Tex Pipe Line Company, wrongfully and without authority signed and subscribed the name of the New-Tex Pipe Line Company, but that the said Frankfurt was not then or at any other time, nor at all, authorized either as the agent of or as the secretary and treasurer of the New-Tex Pipe Line Company to sign or make or execute or deliver said promissory note and trust deed; that at the time of the wrongful, illegal, and unlawful execution and delivery of said promissory note and trust deed the said New-Tex Pipe Line Company and said defendants J. P. Howe and H. C. Meier were not indebted to the plaintiff in the sum of $9,044, nor in any other sum or amount, nor at all; and that the alleged promissory note and trust deed so wrongfully, illegally, and unlawfully made, signed, executed, and delivered by the said H. D. Frankfurt to plaintiff were and are without any consideration," etc.

By reference to the statement of facts, we find the note and trust deed that was admitted in evidence over the objection of appellants. As to dates, names, amounts, payee, etc., they are as described in appellant Howe's pleadings, which inferentially admit they were executed and delivered by H. D. Frankfurt. It is also to be observed that in the bill of exception the specific objection was not made that no evidence had been offered to show that H. D. Frankfurt in fact executed the particular note and trust deed offered. The only part of the bill that can be said to embrace that objection was the very general one that the note was not "the promissory note of the New-Tex Pipe Line Company," further stating as the apparent ground of the general objection noted "that it is not signed by any person authorized to execute promissory notes under the declaration of trust and articles of the association of the New-Tex Pipe Line Company." There is not a suggestion in the entire record that indicates that at any time H. D. Frankfurt ever executed and delivered any other note and trust deed to the beneficiaries therein named, or that the witnesses who testified freely as to furnishing the material, the execution of the note and trust deed, etc., had reference to any other note or trust deed than that declared upon and introduced by the Supply Company. So that, as already indicated, we think that, from the record as a whole, the real objection to the introduction of the note and trust deed, as understood by the court and counsel upon the trial, was that it was not shown that H. D. Frankfurt had authority to bind the New-Tex Pipe Line Company by the execution of those instruments. We will therefore address ourselves to that phase of the subject which has been elaborately briefed in behalf of appellants.

H. C. Meier testified, among other things, as follows:

"As to who the officers of the New-Tex Pipe Line Company were, Mr. Frankfurt was secretary and treasurer. His initials are H. D. J. P. Howe was president, and myself vice president. We were all stockholders in it, of course, and owned stock in it."

Appellant J. P. Howe testified:

"I was president of the Pipe Line Company. As to who were the other officers than myself, the trustees and stockholders of the New-Tex Pipe Line last year, I was president, Mr. Meier was an officer. His initials are H. C. Mr. Frankfurt and Mr. Meier were officers, all four trustees."

Other testimony was undoubtedly to the effect that H. D. Frankfurt was not only the secretary-treasurer of the Pipe Line Company, but was also the general manager of that company; that he conducted the negotiations which ended in the purchase of the material furnished by the Supply Company; and that this was done after consultation with Howe or Meier, or with both. Howe and Meier were not residents of Texas, and Frankfurt, as general manager, had authority as such to do whatever the association itself could do in furtherance of its business, and the material furnished was, as shown by the evidence, undoubtedly needed and used in the construction of the Refining and Pipe Line Companies' lines. Banner Oil & Gas Co. v. Gordon (Tex. Civ. App.) 235 S. W. 945; Hinton v. D'Yarmett (Tex. Civ. App.) 212 S. W. 518.

[3] The articles of the Pipe Line Association were offered in evidence, and therein the secretary and treasurer does not appear to have been authorized to execute notes and trust deed such as those in controversy, and the trust deed itself, under which the Supply Company claims, refers to those articles of association which also expressly limit the power of any officer to personally bind any one of the trustees or stockholders, and it is vigorously insisted that the reference in the trust deed placed the Supply Company upon notice of Frankfurt's want of authority, and also placed the Supply Company upon notice that the trustees and stockholders were thereby protected from personal liability to creditors of the association. The limitation, however, of Frankfurt's authority, as set forth in the articles of association, will in no event defeat liability of the Pipe Line Company upon the note and trust deed in view of the undisputed evidence above referred to that he was the general manager. See Banner Oil & Gas Co. v. Gordon, supra. And if it be assumed that the reference in the trust deed to the articles of association constitutes notice to creditors of the Pipe Line Company that its trustees and stockholders were in no wise to be held personally liable for the debts of the association, we yet think that appellants, as trustees and stockholders, are personally liable, under article 6153, V. S. Tex. Civ. Statutes, for the articles of association are before us in the statement of facts, and without doubt full control of the trustees and property of the association is therein provided for by a board of directors and at meetings of the stockholders which, even under the Massachusetts decisions relating to that subject, fail to free trustees and stockholding members of an association from personal liability for its debts. See the case of McCamey v. Hollister Oil Co. (No. 9732) 241 S. W. 689 (not yet [officially] published), by this court, where, in an opinion by Mr. Justice Dunklin, the authorities and subject are elaborately discussed. We need not repeat what was said in that case. It will be sufficient to say that it was there concluded, after a review of the authorities, that, under circumstances such as were shown in this case at least, and under the operation of our laws relating to incorporated companies, limited partnerships, and joint-stock associations, that effect must be given to article 6153, cited above, which reads as follows:

"In a suit against such company or association, in addition to service on the president, secretary, treasurer or general agent of such companies or associations, service of citation may also be had on any and all of the stockholders or members of such companies or associations; and, in the event judgment shall be against such unincorporated company or association, it shall be equally binding upon the individual property of the stockholders of members so served, and executions may issue against the property of the individual stockholders or members, as well as against the joint property; but executions shall not issue against the individual property of the stockholders or members until execution against the joint property has been returned without satisfaction."

We are the more reluctant to say the technical objections hereinbefore discussed should be sustained in view of evidence that seems undisputed to the effect that H. D. Frankfurt was the general manager of both the Refining Company and the Pipe Line Company; that those two associations, while separate and distinct entities, were nevertheless closely connected and interdependent, the Pipe Line Company extending from the oil fields to the refinery; that to Mr. Frankfurt, after consultation with appellants, was, in the language of one of the witnesses, "left the entire matter" of purchasing the pipe and material furnished by the Supply Company; that Mr. Frankfurt in fact made the purchase as contemplated, and the pipe and material so furnished was largely, if not altogether, used in the construction of the pipe line owned and operated by the Pipe Line Company, and that the record discloses no protest of any kind on the part of any officer of the Pipe Line Company to such purchase and such use, which has been continuous since. It would therefore seem that, upon well-recognized principles of law and equity, the Pipe Line Company would be liable, regardless of whether or not notes for the purchase price with security therefor had been given. We accordingly overrule all assignments of error upon which are

based propositions 2, 3, 4, 5, 6, 7, 8, 9, and 10.

[4] Another question of some difficulty has been presented under appellants' eleventh, twelfth, thirteenth, fourteenth, fifteenth, and sixteenth propositions. Frances G. Brooks, J. H. Crotty, Eva Mae Womack, Southern Oxygen & Hydrogen Company, Martin's Book & Stationery Company, and W. P. Pritchard, whose claims in the aggregate amount to $2,115.30, as before stated, originally intervened and severally claimed indebtedness on the part of the Refining Company. Later, to wit, on June 13 and 23, these parties filed amended pleas of intervention in which they further sought recovery against the Pipe Line Company and against appellants Howe and Meier, personally, as trustees and stockholders therein. The exceptions, which were overruled by the court, to the filing of the several amended pleas of intervention are presented in bills of exception Nos. 3 to 14, inclusive, all substantially the same, and were filed and approved on the 14th day of October, 1921. The bills, omitting formal parts, recite:

"That on the 6th day of June, 1921, said cause came on for trial on said petition of intervention; that at said trial on said day the said Martin's Book & Stationery Company, through its attorney, asked for the allowance of said claim against the New-Tex Pipe Line Company and offered to prove said account against the New-Tex Pipe Line Company, and against J. P. Howe and H. C. Meier as stockholders and partners of said New-Tex Pipe Line Company; that said J. P. Howe and H. C. Meier objected to the allowance or receipt of said claim in evidence against the New-Tex Pipe Line Company, and against J. P. Howe and H. C. Meier, or either of them, because there were no pleadings that would warrant the introduction of said account against the New-Tex Pipe Line Company or J. P. Howe or H. C. Meier, and that there was no allegation in the petition of intervention alleging the partnership of the New-Tex Pipe Line Company or that J. P. Howe and H. C. Meier, or either of them, were stockholders or partners in said New-Tex Pipe Line Company."

We find it to be true, as stated in the bill of exception, that the cause came on for trial "on the 6th day of June, 1921, and that the original pleas of intervention by the parties named made demands against the Refining Company only. The bills of exception are not accompanied by any explanation of the judge, and we are left in some doubt as to what actually occurred at the time, but the judgment as found in the record thus recites, so far as pertinent, to wit:

"On this 6th day of June, A. D. 1921, the court in regular session, the above styled and numbered cause came on to be heard, and the court finding that there have been consolidated and made a part of this cause the following suits, to wit: [Here follow the names of the association and individual interveners, including those above named.]

The judgment thereupon further recites:

"All parties and interveners to this cause being before the court by their respective attorneys, and all announcing ready for trial, none of the parties demanding a jury, but all parties waiving a jury, and all matters of fact as well as of law were thereupon submitted to the court, and the court, having heard the evidence and argument of counsel, and being fully advised in the premises, did on July 1, 1921, adjudge and find as follows."

The judgment thereupon further recites findings of the court and enters decrees disposing of the rights of the several parties, adjudging, among others, in favor of the interveners above named. The judgments were not only against the Refining Company, but also against the Pipe Line Company and against appellants individually. The recitations of the judgment present the inference that, while the trial began on the 6th day of June, prior to the filing of the amended pleas, it was not really concluded until July 1st, some time after the pleas of intervention were filed. There seems to be no question raised as to the validity or extent of the several intervening claims mentioned, nor is it made apparent that the original pleas of intervention, in order to authorize decrees against the Pipe Line Company and appellants, needed allegations other than allegations to the effect that the goods, wares, etc., for which suit was brought had been furnished to an authorized officer of the Pipe Line Company, that it was an association, and that appellants were stockholders and partners therein. It is evident that it was abundantly shown upon the trial of the issues presented by other litigants that the Pipe Line Company was an association, as alleged, and that Howe and Meier were trustees and stockholders; that H. D. Frankfurt was managing officer of the Refining Company, against which the original pleas of intervention were presented, and of the Pipe Line Company. It would seem inferentially true, at least, that appellants were in no wise misled, and that what at the time probably occurred was that, after the development of the evidence as presented by other litigants, the court announced and permitted the interveners named to file amended pleas, in the nature of trial amendments, so as to technically bring themselves into a position where they could receive the relief to which they were entitled under the evidence.

Article 1824, V. S. Tex. Civ. Statutes, provided that amendments to pleadings may be filed under leave of the court upon such terms as the court may subscribe "before the parties announce ready for trial, and not thereafter." But the quoted portion of the article has been held to be directory merely, and that the court is vested with large discretion in granting amendments even after

announcement of the parties. See notes to the article cited.

The burden now rests upon appellants to show that the court abused this discretion in the particulars under discussion, and this we feel unable to say has been done, in the absence of a record showing surprise or a probability that a different result would be reached upon another trial. We accordingly conclude that we must overrule all assignments of error upon which appellants predicate their eleventh to fifteenth propositions, inclusive.

[5] We find, however, that we must concur in appellants' seventeenth and last proposition. In their statement under this proposition, which is not denied, and which, therefore, under the rules, we are authorized to accept as true, it appears that in January, 1920, the Pipe Line Company verbally leased from the intervener Lillis Morgan a small tract of land upon which to construct a pumping plant for use in connection with its pipe line, and that it was used by the lessee for that purpose. She intervened, claiming an indebtedness of $300 and a lien upon the pipe line, and judgment in her favor was so rendered, with order that the claim should be paid out of the proceeds in the receiver's hands, thus making it superior to the lien of appellant Howe.

The amount of the judgment is not in dispute, but we know of no statute in this state conferring or granting lessors of the class of Lillis Morgan a lien upon the property of the lessee. No landlord's lien can exist except by virtue of either a statute or of a contract between the parties. Liens in favor of certain classes of landlords and against a certain property of their tenants are given by the provisions of title 80, V. S. Tex. Civ. Statutes, but the lien asserted by intervener Lillis Morgan does not come within any of the provisions of this title. We accordingly sustain appellant's fifty-eighth assignment of error and seventeenth proposition thereunder, and will so reform the judgment below as to deny Lillis Morgan a lien upon the properties of the Pipe Line Company, but permitting her to participate pro rata in the proceeds of the sale of the Pipe Line properties on an equality with other unsecured creditors of that company as named in the judgment.

[6, 7] But one more question remains for our consideration. The appellee Supply Company by cross-assignment of error complains of the judgment, insisting that its lien should be advanced to third instead of fourth place, over the lien of appellant Howe. We are of opinion that this complaint, under the circumstances of this case, is without merit. We do not understand it be true, as perhaps indicated by some of the authorities, that in this state that the purchase by a trustee of property of the beneficiary is under all circumstances void. It is true that such transactions upon the complaint of proper parties are scrutinized closely, and if it appears that the trustee has acted in bad faith, or been guilty of concealments, or received an unfair advantage, the sale or transaction will be set aside. In this particular case the obligation and lien upon which appellant Howe declared was executed upon the 10th day of March, 1920, in the name of the Pipe Line Company and the Refining Company, by officers of those companies generally authorized to execute such obligations, and no evidence is pointed out which would authorize us, as we think, to disturb the court's judgment on the question. We must assume from the judgment that no such unfairness, imposition, or advantage on the part of appellant Howe was taken of those companies as would render the obligations entirely void; nor is it made to appear that the Pipe Line Company or any of its officers or any of its stockholders at any time have ever complained of that transaction as wanting in fairness. At this point we might with profit review numerous authorities, but, because of the length of our opinion, we will only quote a few words from our own Supreme Court. In the case of Tenison v. Patton, 95 Tex. 284, local citation 292, 67 S. W. 92, that court had this to say on the subject under discussion:

"The right of directors to make fair contracts generally with the corporation is comprehensively stated by many authorities, and such contracts have been upheld in numerous cases, some of them involving purchases of corporate property."

—citing a number of authorities, but further stating that:

"The authorities examined are so numerous that only a few are cited."

Moreover, if appellee, the Supply Company, could in any event, under other circumstances, complain, which we do not decide, it certainly ought not to be permitted to do so in this case, for we find the following clause in its subsequently executed deed of trust, under which it claims, and upon which it sues, and which was by the court foreclosed, to wit:

"This deed of trust subject to one note of $100,000 due J. P. Howe of Des Moines, Iowa; one note of $30,000 due Wichita State Bank & Trust Company of Wichita Falls, Tex., and one for $16,100 due T. J. McMarrough, trustee, all of the above deeds of trust being recorded in the deed records of Wichita county, Texas."

Having thus recognized and contracted with reference to Howe's lien, appellee Supply Company is in no position to urge superiority of its lien. We accordingly overrule appellee Supply Company's cross-assignment of error.

We finally conclude that, as between the appellants and all appellees now before this court, except appellee Lillis Morgan, the judgment below must be affirmed; that as to appellee Lillis Morgan the judgment should be reformed and affirmed so as to deny the lien and foreclosure decreed in her favor, she being permitted to participate as hereinbefore indicated; in all other respects the judgment below is undisturbed.

Affirmed in part; reformed and affirmed in part; undisturbed in part.

BUCK, J., absent, not sitting.