CHAPIN v. FORD.   (No. 5836.)

(Court of Civil Appeals of Texas. San Antonio. April 4, 1917. Rehearing Denied May 2, 1917.)

1. COVENANTS ⚏42(1) — AGAINST INCUMBRANCES—PROVISION OF DEED.

Under Rev. St. 1911, art. 1112, providing that from the use of the word "grant" or "convey" in a conveyance by which a fee simple is to be passed a covenant that the estate is free from incumbrances is implied, unless restrained by express terms in the conveyance, provision in a deed of land on which was a mortgage of the grantors to an insurance company for $15,000, payable in three years, that the grantors shall have the right to relieve the premises from existing incumbrances at any time before the last purchase-money note given by the grantees matures, cannot be construed to impair the force of the special warranty immediately following that the grantors will hold harmless the grantees against enforcement of any liens on the lands at the time of their purchase, the grantees having given ten purchase-money notes, nine for $1,500 each, due one each year after date, for nine years, and one for $8,715, due ten years after date, and the grantor being insolvent.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 43.]

2. VENDOR AND PURCHASER ⚏286—STAY OF EXECUTION.

Execution on judgment on notes for purchase price of land should be stayed in a sufficient amount to protect the purchaser against lien of incumbrances not yet due, against which the insolvent vendor covenanted.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 808, 809.]

Appeal from District Court, Kerr County; R. H. Burney, Judge.

Action by S. B. Ford against D. B. Chapin and others. From an adverse judgment, the named defendant appeals. Affirmed in part, and reversed and rendered in part.

Lee Wallace and W. G. Garrett, both of Kerrville, and D. B. Chapin, of Laredo, for appellant. Guy S. McFarland, of San Antonio, for appellee.

FLY, C. J. This is a suit instituted by appellee against D. Sullivan, D. J. Sullivan, May Sammons, and D. B. Chapin, to recover against them the amount of nine promissory notes for $1,500 each, dated January 16, 1915, due respectively in one to nine years from date, with interest at 7 per cent. per annum, and a note for $8,715 of same date due in ten years after said date, each note providing that past-due interest should bear interest at 10 per cent. per annum, and providing that in case of default of payment of principal 10 per cent. additional on the same should be paid for attorney's fee, if placed in hands of an attorney for collection, or if collected by suit, and also providing that the failure to pay any one or more of the notes at maturity would cause all of them to become due and payable if the holders thereof should so elect. The notes were alleged to have been

executed by Albert Sammons and wife, May Sammons, for part of the purchase money of certain lands, being 7,732.61 acres, in Kerr county and a city block in Kerrville, which had been conveyed to them by appellee, an express lien having been reserved in the deed, as well as set forth in a deed of trust to secure the payment of the notes. Appellee also sought a recovery of a balance of $1,554.77, alleged to be due on ten promissory notes for $566 each, secured by a deed of trust on the same lands. It was alleged that appellant purchased the land from May Sammons, the widow of Albert Sammons, deceased, and had assumed payment of the notes as a part consideration for the conveyance. The two Sullivans and May Sammons disclaimed all interest in the land, the last named alleging that she had sold her equity in the land to appellant for $1,600 and his assumption of the payment of the promissory notes executed by her and her deceased husband.

Appellant pleaded in abatement the pendency of a suit instituted by him in the Forty-Fifth district court of Bexar county, which plea was overruled, and then he filed an answer consisting of a general denial, an admission that the notes had been executed as alleged, that they were secured by the liens alleged, and that he had purchased the land and assumed payment of the notes, but claimed the payment of $5,000 to appellee which had been credited on the second lien notes instead of on those secured by the first lien. It was further alleged that at the time appellee conveyed the land to Sammons it was incumbered by a mortgage to secure a note for $15,000, executed by appellee to the Ætna Life Insurance Company. Appellant admitted default in the payment of the first note to become due, and pleaded an offer made by him to pay the full amount of the notes if appellee would satisfy the mortgage on the land given to the insurance company, which he refused to do. A cross-action for damages by appellant was dismissed upon exceptions. The cause was tried without a jury, and resulted in a judgment in favor of appellee for $28,025.

It was proven that the lands were sold, as alleged, by Ford and wife to Sammons and wife, the ten notes sued on first herein described being given for part of the purchase money for the land, and each note reciting that upon a failure to pay any one note of the series or the interest thereon all the notes should, at the option of the holder, mature. There was provision for past-due interest to bear 10 per cent. interest and for attorney's fees. A vendor's lien was expressly reserved in the deed and notes. A deed of trust on the land was also executed by the vendees to secure notes. At the time of sale of the lands to Sammons and wife appellee owed the Ætna Life Insurance Company the sum of $15,000, evidenced by a promissory note and secured by a mortgage on the lands sold

to Sammons and wife, and appellee and wife in their deed bound themselves to protect their vendees from the lien. The note to the insurance company was secured by a deed of trust on the lands in question.

The following clause was placed in the deed:

"But it is understood and agreed that we, the said S. B. Ford and Anna B. Ford, our heirs and legal representatives, shall have the right to relieve the foregoing described lands herein conveyed from the incumbrances existing thereon at any time before the last note executed and delivered by the said Sammons, hereinbefore described, matures, it being understood further, however, that we bind ourselves, our heirs and legal representatives, to protect and hold harmless the said Sammons against the enforcement of any of said liens now existing on the said lands, that is to say, the liens existing on the said lands at the time of the purchase of said lands by the said Sammons from us."

[1] The clause quoted is somewhat obscure, but was construed by the trial judge to mean that it modified the general warranty, as well as the special one against the liens, to such an extent that appellee could postpone the payment of the $15,000 due the insurance company until the ten-year note for $8,715 became due. The note for the $15,000 will mature on March 1, 1918, and no contract made by and between Sammons and appellee as to when the latter shall pay off the note can have any effect. It must be presumed that when the note is due the insurance company will demand payment, and if payment is not made will proceed to institute suit to foreclose their lien on the land. If it was the desire to postpone the payment as indicated, a thing was attempted over which neither vendor nor vendee had any control whatever.

Under the general warranty clause in the deed from appellee and wife to Sammons and wife there was the implied covenant that the estate conveyed was free from incumbrances, among the latter being all liens upon the property, unless restrained by express terms contained in such conveyance. Rev. Stats. arts. 1112, 1113. No such restraint can be derived from the words herein quoted from the deed. The words permitting the payment of the $15,000 at any time before February, 1925, cannot be distorted into an attempt to restrain the general warranty. The statute provides that the implied warranties named therein shall arise "unless restrained by express terms contained in such conveyance." Such restraint cannot be implied, it cannot be read by construction into the deed, but it must appear therein in "express terms." That there was no intention upon the part of the vendor and vendee to limit, restrict, restrain, or impair the full force of the warranty is evinced by the special warranty immediately following the language in question in which it is recited:

"It being understood further, however, that we bind ourselves, our heirs and legal representatives, to protect and hold harmless the said Sammons against the enforcement of any of said

liens now existing on the said lands, that is to say, the liens existing on the said lands at the time of the purchase of the said lands by the said Sammons from us."

The force of that positive and explicit warranty cannot be weakened or impaired by the obscure and uncertain language about when appellee should pay off the lien to the insurance company, a matter over which neither party had any control or any right to contract. The court held that the language used in regard to when the lien should be discharged had the effect of giving Sammons or his assigns the right to refuse payment of the $8,715 note until the $15,000 was paid, or, in other words, that Sammons had contracted for $8,715 worth of security against a $15,000 lien on his land.

That such was not the intention of the parties is indicated by the fact that only three of the notes for $1,500 each were to become payable before the $15,000 note was due to the insurance company, thus leaving notes unpaid at that time in the sum of $17,-715, which would be sufficient protection against the lien. It must be presumed, in the absence of an express contract to the contrary, that this protection was demanded and given, against a man alleged by appellant, and seemingly not controverted, to be wholly insolvent. Without such protection against the lien, appellant would have nothing as security but his debt of $8,715, and a claim against an insolvent party. We do not believe that any such state of affairs was within the contemplation of the parties, and, if it was, it has been so inaccurately and obscurely expressed as not to be intelligible. In order to destroy or impair the warranty against incumbrances it should be clear and plain, and set forth in express terms.

We need not enter into the question of the power and authority of the appellee to declare all the notes matured. It was done, and appellant has expressed a willingness and desire to pay off the notes if the incumbrance of the lien for $15,000 is removed from his land, and the question of the power to declare all the notes matured is of no consequence. While there was no legal tender of any sum by appellant, still, having pleaded his willingness to discharge all the debt due appellee as soon as the liens on the land are discharged, he will have no cause for complaint when he is given exactly what he seeks.

[2] We are of opinion that there was no error in rendering judgment for the whole amount of the notes, but the court should have stayed execution of the judgment on a sufficient amount of the debt to protect appellant against the lien of the Ætna Life Insurance Company. Brown v. Montgomery, 89 Tex. 250, 34 S. W. 443; McLean v. Connerton (Tex. Civ. App.) 78 S. W. 238. In both of the cited cases the right of the vendee to have a stay of execution on his notes for purchase money until incumbrances on the land are removed by the vendor is fully sustained. Justice and equity sustain such decisions.

That part of the judgment in favor of appellee as against appellant for the full amount of the debt and interest and attorneys' fees and foreclosure of the liens on the land described in the petition and the judgment as against appellant, D. Sullivan, D. J. Sullivan, and May Sammons is affirmed, but in other respects it is reversed, and judgment is here rendered that an order of sale shall not issue as against such lands, except for the debt, interest, and attorneys' fees evidenced by three notes for $1,500 each, due on their face, respectively, on January 16, 1916, January 16, 1917, and January 16, 1918, and no steps be taken to force payment of the same until 60 days after said $15,000 note executed to the insurance company, together with all interest thereon accrued, shall have been fully paid and a legally executed and acknowledged release of the liens securing said note has been filed and recorded in the records of the proper county. It is further adjudged that appellee pay all costs of this appeal.

Affirmed in part, and reversed and rendered in part.