**Gary W. HAMPTON, Appellant,**

v.

**Katherine MINTON, et al., Appellees.**

No. 3–89–084–CV.

Court of Appeals of Texas, Austin.

Jan. 31, 1990.

Rehearing Overruled March 7, 1990.

Charles W. Wendlandt, Jr., Minter, Joseph & Thornhill, Austin, for appellant.

Chester E. Beaver, Arnold & Fleckman, J. Andrew Hathcock, Austin, for appellees.

Before SHANNON, C.J., and GAMMAGE and JONES, JJ.

JONES, Justice.

The main issue in this appeal is whether a payee on a "wraparound note" must continue to pay his own creditor—the holder of a senior lien—after the wraparound maker has defaulted on the wraparound note. Katherine Minton and Marke Hampe (collectively referred to as "Minton"), appellees, sued Gary Hampton, appellant, to recover the deficiency remaining on a wraparound note after foreclosure of a senior lien. Following a trial to the court, the district court rendered judgment in favor of Minton for the balance due on the wraparound note, less a credit for the amount bid at the senior lienholder's foreclosure sale. We will affirm the trial court's judgment.

The record establishes that in 1981 the Pinkertons conveyed a day care center and 1.166 acres of land to Minton by warranty deed, reserving a vendor's lien and a deed of trust to secure the payment of a $122,000 note (the "Pinkerton note"). In 1985, Minton sold the day care center and the property to Hampton and his partner Wayne Tatsch. As part of the purchase price for the property, Hampton and Tatsch executed a note to Minton in the original principal amount of $230,000 (the "Minton note"), which was secured by a vendor's lien and a deed of trust. The Minton note "wrapped around" (i.e., included within its balance) the unpaid balance of the Pinker-

ton note. In addition to requiring monthly payments to Minton, the Minton note required Hampton to pay the property taxes and maintain insurance on the property.

The warranty deed from Minton to Hampton contained the following provision:

This conveyance is made subject to and the grantee herein does not assume payment of the unpaid balance of that certain $122,000.00 indebtedness described in and secured by the Deed of Trust of record in Volume 7403, Page 134, Deed of Trust Records of Travis County, Texas, but grantor, as well as any other owner and holder of grantee's $230,000.00 note, shall be obligated to pay any and all installments falling due thereon as and when due, and in the event of default in the payment of any such installment as and when due, then, so long as grantee is not in default in the payment of grantee's aforesaid $230,000.00 note, or in default in the performance of the covenants of the Deed of Trust securing said note, grantee shall have the right to pay any such delinquent installment or installments and to receive a credit upon grantee's $230,000.00 note in such manner as grantee shall direct, as of the date of such payment.

The Minton note and deed of trust also contained similar language.

Hampton failed to pay the December 1986 premium for the insurance policy covering the property, and also failed to pay the 1986 property taxes. On April 8, 1987, Minton notified Hampton that the maturity of the note had been accelerated pursuant to the terms of the note, and demanded payment of the balance of the note. When the balance was not paid, Minton posted the property for foreclosure. The sale was passed when Tatsch filed a personal bankruptcy petition on the morning of the proposed foreclosure sale.

After acceleration, Hampton made no further payments on the Minton note. On May 30, 1987, Minton failed to pay the monthly installment due on the Pinkerton note. On June 10 Mrs. Pinkerton sent Minton written notice of default and posted notices of foreclosure for July 7. No notice of the Pinkertons' scheduled foreclosure sale was given to Hampton. On July 7 the trustee of the Pinkerton deed of trust conducted a nonjudicial foreclosure and conveyed the property to Mrs. Pinkerton in consideration of her $90,000 bid. At that time the balance due on the Minton note was $235,132.20 and the balance due on the Pinkerton note was $109,088.73. In its judgment the trial court subtracted the amount bid at the foreclosure sale from the balance due on the Minton note, and awarded the difference to Minton.

In his first and second points of error, Hampton argues that in order for Minton to be able to recover damages for Hampton's breach of the Minton note, Minton was required to continue making payments on the Pinkerton note after Hampton's default. Hampton's position is based on two alternative arguments: first, that Hampton's default on the Minton note did not excuse Minton's obligation to pay the Pinkerton note; and second, that Minton, by suing to "specifically enforce" the contract, did not treat Hampton's breach as a repudiation of the contract, but rather kept the contract alive, thereby waiving her excuse for failing to perform her own promise to pay the Pinkerton note.

■ Generally, when a party to a contract seeks to enforce the agreement or to recover damages for breach of the agreement, that party must prove that he has performed all of his own obligations under the contract. *Lake LBJ Mun. Util. Dist. v. Coulson*, 692 S.W.2d 897, 907 (Tex.App. 1985), rev'd on other grounds, 734 S.W.2d 649 (Tex.1987). In a bilateral contract, where promises have been exchanged for an exchange of performances and the contract is executory on both sides, one party's repudiation of a duty to perform, or a breach of the contract of such materiality as to indicate an intention to repudiate the contract, excuses or discharges the other party's remaining obligation to perform. *Glass v. Anderson*, 596 S.W.2d 507, 511

(Tex.1980); *see generally* Restatement (Second) of Contracts §§ 235–49 (1981). In the present case (1) the contract was executory, *Flag–Redfern Oil Co. v. Humble Exploration Co.*, 744 S.W.2d 6, 9 (Tex. 1987), (2) Hampton's failure to pay the accelerated indebtedness was a material breach amounting to repudiation, *Continental Cas. Co. v. Boerger*, 389 S.W.2d 566, 568 (Tex.Civ.App.1965, writ dism'd), and (3) the promises in the contract were mutually dependent, *Morgan v. Singley*, 560 S.W.2d 746 (Tex.Civ.App.1977, no writ). Therefore, Minton's obligation to perform was excused by Hampton's prior breach.

However, Hampton contends in his second argument that Minton waived her excuse for failing to perform by suing to specifically enforce the contract after Hampton's breach. Texas courts have held that "[a] party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part." *Hanks v. GAB Business Services, Inc.*, 644 S.W.2d 707, 708 (Tex.1982). Therefore, we must determine whether Minton elected to treat the contract as continuing.

■ When a party repudiates a contract, either expressly or by a material breach, the opposite party may elect between certain legal remedies. In a contract to convey land in which a deed is exchanged for a note and a vendor's lien, once the vendee breaches the agreement the vendor may abandon (i.e., rescind) the contract and recover the land, or the vendor may, while accepting the vendee's repudiation, "affirm" the contract and have judgment for his debt and foreclosure of the lien. *Hill v. Preston*, 119 Tex. 522, 34 S.W.2d 780 (1931). The vendor may also treat the contract as continuing. *Hanks*, 644 S.W.2d at 708. Minton did not seek rescission of the contract. In so doing, however, Minton did not necessarily "refuse to accept Hampton's repudiation" so as to keep the contract obligations on both sides alive. First, the rule requiring the non-breaching party to "accept," by words

or conduct, the breaching party's repudiation has not received favorable treatment by recent authorities and, in any event, has generally been applied in the context of an *anticipatory* repudiation. *See Glass*, 596 S.W.2d at 513. Hampton's breach was not an anticipatory repudiation, but a material non-performance. Second, Minton's actions did not indicate an intention to keep the contract alive. To the contrary, the acceleration of the debt and posting for foreclosure indicate a clear acceptance of Hampton's repudiation. Minton "affirmed" the contract only in the sense that she did not seek to rescind it. Third, we view Minton's suit as one for damages, not specific performance; we are not persuaded, however, that it makes any difference in the present context. Finally, even if some of Minton's actions could be interpreted as indicating an intention to treat the contract obligations on both sides as continuing, we hold that the evidence here is not *conclusive* of such an intention.

■ Moreover, had Minton successfully foreclosed on the property and then defaulted in her payments on the Pinkerton note, Hampton would have no complaint as to Minton's subsequent failure to perform. We see no reason why Minton should be deprived her excuse when seeking damages, rather than foreclosure, as a remedy to Hampton's breach, especially in light of the fact that Hampton made no showing of his ability to pay the accelerated Minton note on the day of the proposed foreclosure sale. By not foreclosing on the property before her own default, Minton lost her superior title and security in the property. She did not, however, lose her right to seek damages for Hampton's breach.

■ Additionally, Hampton argues that Minton is barred from asserting an excuse to her performance because she failed to specifically plead excuse. *See Smith v. Fort*, 58 S.W.2d 1080 (Tex.Civ.App.1933, no writ). However, Hampton did not specially except to Minton's petition. Without addressing the merits of Hampton's conten-

tion, we hold that Hampton waived any complaint relating to Minton's pleading by failing to specifically point out the omission of the allegation by exception in writing before the judgment was signed. Tex.R. Civ.P.Ann. 90 (Supp.1989).

 Because we have decided that Minton was excused from her obligation to pay the Pinkerton note, Hampton cannot recover damages from Minton for Minton's subsequent failure to perform. *Glass,* 596 S.W.2d at 514. Therefore, Minton had no obligation to continue paying her own creditors after Hampton's breach. Both parties cite us to *Lee v. Key West Towers, Inc.,* 783 S.W.2d 586 (Tex.1989). There, the Lees, the wraparound makers at the end of the chain of wraparound notes, defaulted on their note to their wraparound payee. The Lees' default set off a domino effect of defaults up the chain of wraparound notes, resulting in foreclosure by the original payee. After the foreclosure, the Lees' payee successfully brought suit against the Lees for a deficiency judgment. The issue on appeal was the method to be used to determine the amount of the deficiency; neither the court of appeals nor the Supreme Court specifically addressed the issue of the wraparound payee's obligation to pay her creditor or the effect that a payee's breach would have on the wraparound maker's liability. However, the case is factually analogous to the present one and supports the propositions that (1) when the maker of a wraparound note materially breaches the agreement, thereby triggering a chain of events that results in foreclosure by a senior lienholder, the holder of the wraparound note may, notwithstanding his own failure to pay the prior note, recover a deficiency judgment against the maker of the wraparound note, and (2) damages in such a case are determined by using the "outstanding balance" method of calculation: the outstanding balance due on the wraparound note, less the amount bid at the foreclosure sale. *Id.* at 587. Hampton's first and second points of error are overruled.

 In his third point of error, Hampton asserts that the trial court's judgment is in error because the evidence conclusively establishes that the consideration for the Minton note and deed of trust failed. The basis for this argument is that Minton's promise in the warranty deed to pay the Pinkerton note "as and when due" is a "covenant of title." Hampton argues that Minton's failure to pay the note when it came due deprived Hampton of title to the property and constituted a failure of consideration.

In a situation involving wraparound financing where the vendee has not materially breached the agreement and the vendor breaches his obligation to pay his own creditor, Hampton's failure of consideration argument would be correct. *See Kauffman v. Brown,* 83 Tex. 41, 18 S.W. 425 (1892); *Newsom v. Starkey,* 541 S.W.2d 468 (Tex. Civ.App.1976, writ ref'd n.r.e.); *Ledbetter v. Howard,* 395 S.W.2d 951 (Tex.Civ.App. 1965, no writ). This would be the proper result not because the promise constituted a covenant of title, but because the covenants in the deed are memorials of the mutual promises between the vendor and vendee. Regardless of what label is assigned to the vendor's promise to pay holders of superior liens, be it a covenant of title or something else, the promise is still part of a contractual agreement and the instrument must be construed according to the rules of contract law. *See Hedick v. Lone Star Steel Co.,* 277 S.W.2d 925, 928–29 (Tex.Civ.App.1955, writ ref'd n.r.e.); *see also James v. Adams & Wikes,* 64 Tex. 193, 198 (1885). Under the circumstances of the present case, Hampton's material breach excused Minton's obligation to pay the Pinkerton note, even if her promise constituted a covenant of title.

 Hampton further argues that Minton's promise to pay the Pinkerton note constituted a covenant against encumbrances and that Minton's subsequent failure to pay was a breach of this covenant. In support of this argument, Hampton cites *Chapin v. Ford,* 194 S.W. 494 (Tex.Civ.

App.1917, writ ref'd). A covenant against encumbrances is breached, if at all, on execution and delivery of the deed. *Beaumont v. Moore*, 146 Tex. 46, 202 S.W.2d 448 (1947); *Ragsdale v. Longford*, 358 S.W.2d 936 (Tex.Civ.App.1962, writ ref'd n.r.e.). The covenant contained in the deed in *Chapin* is factually similar to Minton's covenant, but did not contain the "subject to" language. On that basis, the court in *Chapin* construed the covenant as not excluding the existing liens on the property from the warranty against encumbrances. Thus, the court held that the covenant was breached by the very existence of the prior lien. The deed between Minton and Hampton, on the other hand, specifically stated that it was "subject to" the Pinkerton note and therefore excluded the Pinkerton note from the covenant against encumbrances. Because no warranty against encumbrances was ever made with regard to the Pinkerton lien in Minton's deed to Hampton, the subsequent foreclosure of that lien cannot constitute a breach of the covenant against encumbrances. Hampton's third point of error is overruled.

 Finally, in his sixth point of error, Hampton claims that even though he was in default on his obligation to pay Minton, he was entitled to receive notice of the nonjudicial foreclosure of the Pinkerton lien. Under the express language of the warranty deed and the deed of trust, any right that Hampton may have had to cure a default by Minton under the Pinkerton note existed only so long as Hampton was not in default under the Minton note. This language necessarily implies that Minton was under no duty to advise Hampton of any pending foreclosure of the Pinkerton note if Hampton was then in default. The language in the instruments is a recognition by the parties that Hampton's right to protection against foreclosure of the included debt depended upon his performance on the wraparound note. When Hampton failed to perform in accordance with the terms of the Minton note, he forfeited his protection from foreclosure of the senior lien securing the Pinkerton note. Hampton's sixth point of error is overruled.

The judgment of the trial court is affirmed.

GAMMAGE, J., not participating.