# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00274-CV

**Dora Amos and Leo Watson, Appellants**

**v.**

**David Ferretti; Carole Ferretti; and DC Industries, Inc., Appellees**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
### NO. 02-176-C277, HONORABLE KEN ANDERSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Dora Amos and Leo Watson (collectively "Watson") entered into a real estate contract under which Watson was to buy four parcels of land from appellees David Ferretti, Carole Ferretti, and DC Industries, Inc. (collectively, "Ferretti"). About nine months after closing the sale, Ferretti notified Watson that he was in default and that Ferretti was accelerating the note. Shortly thereafter, the parties discovered that the title company had made an error, omitting from the legal description of the land two of the four tracts. Watson sued, seeking a declaratory judgment that Ferretti breached the contract by failing to convey all of the property contemplated by the parties and that any default by Watson was therefore excused. Among other claims, Watson sought damages for breach of contract and statutory fraud and sought equitable relief of reformation and specific performance. Ferretti cross-claimed, seeking judgment for the debt outstanding under the note.

After a bench trial, the trial court entered judgment in favor of Ferretti. Watson appeals, arguing that the trial court's judgment is not supported by legally or factually sufficient evidence and that the court abused its discretion in denying equitable relief. We affirm the trial court's judgment.

**Factual & Procedural Background**

In February 2001, Watson and Ferretti entered into a real estate contract under which Watson agreed to buy four parcels of land for $780,000; Ferretti agreed to finance $702,000 of the sales price. In May, the parties closed the sale and Watson executed a lien note for $702,000 and a deed of trust. Under the deed of trust, Watson was obligated to keep the property in good repair and condition, maintain insurance and deliver an insurance policy to Ferretti, pay all taxes when due, and, upon request, provide evidence to Ferretti that the taxes were paid "when due." Ferretti was given the right to perform any obligations not fulfilled by Watson and demand reimbursement for those obligations. Ferretti was also allowed to accelerate the note if Watson defaulted and failed to cure his default. Watson waived his right to receive notice of an intent to accelerate. At the time of closing, Ferretti was occupying space on the property, and he agreed to either vacate within thirty days or pay $600 a month in rent. Unbeknownst to Watson or Ferretti, the title company used an erroneous legal description of the land, omitting two of the tracts from the closing documents, including the warranty deed and deed of trust. After closing, the parties proceeded under the assumption that all of the tracts had been conveyed.

On November 12, 2001, Ferretti forwarded two tax notices he received to Watson, reminding Watson that proof of payment was required; a third tax notice was mailed directly to Watson, but a fourth notice was never received by either party. The notices stated that taxes were

2

due on October 1, 2001, and would become delinquent on February 1, 2002, but also provided increasing amounts due if paid in February, March, April, May, or June. Watson did not pay the taxes by February 1. He testified that he decided not to pay by the due date because his bank had gone into bankruptcy, tying up his funds at the same time that he was obligated to pay about $100,000 in taxes on various properties. To conserve capital, he chose to pay some taxes late along with a penalty, which he had done without incident for other properties in the past. Watson testified that because the bills set out payment amounts due if paid up until June, he believed he had until June to pay the taxes.

On February 6, 2002, Ferretti sent Watson a letter titled, "NOTICE OF DEFAULT," informing Watson that he was in default for the following reasons:

1. FAILURE TO SUBMIT PAYMENTS PER THE TERMS OF THE REAL ESTATE LIEN NOTE. . . .

   NOTE: 11-12-01, A NOTICE WAS MAILED REGARDING DELINQUENCY CHARGE.

   CURE TIME FOR THE ABOVE DELINQUENCY - 10 DAYS.

2. FAILURE TO COMPLY WITH GRANTORS OBLIGATIONS IN THE DEED OF TRUST

   A. KEEP THE PROPERTY IN GOOD CONDITION AND REPAIR.

   B. DELIVER THE INSURANCE POLICY TO BENEFICIARY.

   C. SATISFACTORY EVIDENCE THAT ALL TAXES AND ASSESSMENTS ON THE PROPERTY HAVE BEEN PAID WHEN DUE.

   CURE TIME FOR THE ABOVE - 10 DAYS.

3

Watson responded, enclosing an insurance certificate and demanding $1400 from Ferretti for rent. Watson did not pay the taxes, address the issue of taxes in his response to Ferretti, or otherwise communicate any information to Ferretti about the taxes or his financial situation. On February 21, Ferretti discovered that the taxes had not been paid. He paid $4,730.32 in delinquent taxes on the four parcels and sent Watson a letter notifying him that he was in default, giving notice that he was accelerating the note and demanding payment in full by April 2. Ferretti also stated that Watson's right to collect rent from the property's tenants was terminated and that Ferretti would immediately take over rent collection.

Watson filed suit on March 27, seeking a declaration that (1) any default by Watson was excused by Ferretti's earlier breaches of failing to convey all of the property and failing to fully pay rent after holding over on the property; (2) Ferretti had no right to accelerate the debt or foreclose on the property; (3) Ferretti had no right to hold the corrected deed "hostage," requiring Watson to agree to foreclosure or waive his rights to injunctive relief; and (4) Ferretti had no right to collect rent. Watson sought damages for breach of contract, statutory fraud, breach of duty as agent, and tortious interference. Watson also sought equitable relief in the form of reformation of the deed, specific performance, and injunctive relief barring Ferretti from foreclosing on the property. Ferretti counterclaimed, seeking judgment for the amount due under the deed of trust and asserting that Watson had not performed necessary maintenance and repairs, paid all taxes when due, or cured his default after receiving notice from Ferretti. Ferretti stated that he was "fully willing to execute and deliver a correction deed and any other documents necessary to correct any errors in the legal description of the Property." Following a bench trial, the trial court ordered that the real estate

4

documents should be corrected as contemplated by the original real estate contract and that Watson was liable to Ferretti for $753,402.63, plus pre- and post-judgment interest and attorney's fees.

On appeal, Watson asserts that Ferretti breached the contract and committed statutory fraud when he gave Watson a deed conveying only part of the property and that Watson was thus excused from "any duty under the promissory note and deed of trust." Watson further argues that the promissory note and deed of trust were the result of a mistake and invalid, that Watson received inadequate notice of the taxes, that Ferretti had no right to accelerate the debt, and that he is entitled to equitable relief.

**Standard of Review**

When no findings of fact and conclusions of law are filed, we infer that the trial court made all findings necessary to support its judgment. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *see Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). However, when the record includes a reporter's record, a party may challenge the legal and factual sufficiency of the implied findings, and we will review those arguments under the same standards used to review jury findings. *Roberson*, 768 S.W.2d at 281. In reviewing legal sufficiency, we view the evidence in a light that supports the disputed findings, disregarding evidence and inferences to the contrary when reasonable to do so. *Sibley*, 111 S.W.3d at 52; *see generally City of Keller v. Wilson*, No. 02-1012, 2005 Tex. LEXIS 436 (June 10, 2005) (discussing and explaining proper view of evidence under legal sufficiency review). In reviewing factual sufficiency, we view all of the evidence and uphold the finding unless the supporting evidence is so weak or the finding so against the overwhelming

5

weight of the evidence as to be manifestly unjust. *AT & T Corp. v. Rylander*, 2 S.W.3d 546, 551-52 (Tex. App.—Austin 1999, pet. denied).

The trial court as finder of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Raymond v. Rahme*, 78 S.W.3d 552, 556 (Tex. App.—Austin 2002, no pet.). The trial court may draw reasonable inferences from the evidence, and its findings will not be disturbed on appeal unless the record contains no probative evidence on which the court could base its inferences or the findings are so contrary to the evidence as to be unjust. *Carson v. State*, 117 S.W.3d 63, 66 (Tex. App.—Austin 2003, no pet.). Our review of a trial court's determination of legal principles is much less deferential, and the trial court abuses its discretion if it misinterprets or misapplies the law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

**Discussion**

By its order that the parties were to immediately execute a correction deed, correction lien note, and correction deed of trust, the trial court impliedly found and concluded that a mutual mistake was made at the real estate closing. By its order that Ferretti should recover $753,402.63 from Watson, the court impliedly found and concluded that Watson had defaulted on the contract and that the mutual mistake did not excuse him from complying with his contractual obligations.

The parties agree that the error in the legal description was a mutual mistake.[1] As discussed below, a mutual mistake does not excuse Watson from his contractual obligations. We

---

[1] A mutual mistake is established when the evidence shows that both parties were acting under the same misunderstanding of the same material fact. *Lacy v. Ticor Title Ins. Co.*, 794 S.W.2d 781, 784 (Tex. App.—Dallas 1990, writ denied).

6

will first determine whether Watson defaulted on the agreement. We will then address Watson's arguments that the mistake amounted to a breach of contract or statutory fraud excusing Watson's performance. Finally, we will address whether Watson's default, if any, justified Ferretti's acceleration of the note and whether Watson was entitled to equitable relief.

*Did Watson Default on the Contract?*

In his fourth issue, Watson contends that the deed's language related to tax payments is unenforceably vague, that he received inadequate notice of the taxes, and that Ferretti waived his tax-related claims.

The deed of trust states that property taxes were required to be paid "when due." The property tax notices themselves state that the taxes "are due on Oct 1st and become delinquent Feb 1st." The notices set out the tax due if paid before January 31, as well as increasing amounts due if paid in February, March, April, May, or June. Watson argues that he was confused by the conflicting language of the tax notices and believed he had until June to pay the taxes. Watson argues that "when due" is vague because statute provides that property taxes are due "on receipt of the tax bill." *See* Tex. Tax Code Ann. § 31.02 (West Supp. 2004-05).

Tax bills are to be mailed to property owners "by October 1 or as soon thereafter as practicable." *Id*. § 31.01(a) (West 2001). The failure to send or receive a tax bill generally does not affect the validity of the tax, penalty, or due date. *Id*. § 31.01(g). Taxes are due upon receipt of a tax bill and become delinquent if not paid by February 1 of the next tax year. *Id*. § 31.02(a); *see Atlantic Richfield Co. v. Warren Indep. Sch. Dist.*, 453 S.W.2d 190, 201 n.5 (Tex. Civ. App.—Beaumont 1970, writ ref'd n.r.e.) (former tax code provided that "taxes become due and

7

payable not earlier than October 1 of the taxable year and may not be paid or accepted prior to that date," "do not become delinquent until February 1 of the succeeding year," and cannot be collected through delinquent-tax suit until after July 1 of succeeding year).

Watson insists that his argument as to the vagueness of the due date is not one of mere semantics. However, the fact that taxing authorities had in the past allowed Watson to pay delinquent taxes with an added penalty does not change the fact that he was on notice that taxes paid after January were delinquent. The tax bills stated that the taxes were due before February 1, that taxes became delinquent on February 1, and that payments made after that date would incur additional penalties. Watson testified that he had paid taxes late in the past, that under the contract he was obligated to pay the taxes when due, that he knew taxes were "due by the end of January," and that most of his property taxes were not paid "on time" for 2001. Watson did not communicate to Ferretti his intention to pay the taxes sometime before June, even after receiving Ferretti's letter noting that Watson had not provided proof of timely tax payments. Further, although neither Watson nor Ferretti received one of the four tax notices, Watson was not harmed by the missing notice because he had in his possession the other three and testified that he had no intention of paying any of the bills on time. He consciously chose not to pay those bills by February 1 in an attempt to conserve funds while his financial situation was uncertain. This is not a situation where Watson failed to pay the missing bill out of ignorance of its existence. He failed to pay any of the bills as a result of a conscious decision.

A common-sense reading of the tax code and the tax bills leads not to confusion but to a conclusion that tax bills are mailed around or soon after October 1, are due at anytime between

8

October 1 and January 31, and become delinquent on February 1. The trial court did not err in reaching this conclusion and in finding that Watson understood when the taxes were due and failed to pay them before they became delinquent, thus defaulting under the deed of trust.

Watson goes on to argue that he cannot be considered in default because he did not receive adequate notice of the taxes and that Ferretti waived any right to hold Watson in default on the property by his delay in forwarding the tax notices. One tax notice was never received by either party, one was sent to Watson, and two were sent to Ferretti and then forwarded to Watson. Watson did not receive the forwarded notices from Ferretti until mid-November. Once Watson received the forwarded notices, he believed them to be "for purposes of information, to be filed away." Ferretti testified that he did not know exactly when he received the tax bills, which were sent to an old address and forwarded by the post office, but said it was "likely" that he received them "around" October 1.

If Ferretti received the notices around October 1, he did not forward the notices for about six weeks, and a mortgagee is required to forward tax notices within thirty days of receipt. *See* Tex. Tax Code Ann. § 31.01(j). Watson urges that Ferretti's delay waived any right he had to claim Watson had defaulted by not paying the taxes when due. We disagree. Ferretti may have delayed forwarding the tax notices longer than he should have, but his mail was being forwarded, resulting in some delays, and he did not know when he received the notices, although he thought it was probably around October 1. Further, the tax code, while imposing a thirty-day window to forward tax notices, also provides that failure to receive a tax notice does not excuse a property owner from paying his taxes. *Id*. § 31.01(g). Watson received three of the four notices by mid-November, more

than two months before the taxes became delinquent. He did not pay any of the taxes by February 1 and testified that he intentionally chose not to pay for financial reasons, not because of any lack of notice.

The trial court did not err in finding that Watson received adequate notice, understood the tax deadline, and defaulted on his obligation to timely pay the taxes. We overrule Watson's fourth issue on appeal.

*Did Ferretti Breach the Contract?*

In Watson's first issue, he contends that Ferretti breached the real estate contract by conveying less property than the real estate contract contemplated and, thus, Watson was excused from any duty imposed under the promissory note and deed of trust.

The essential elements of breach of contract are a valid contract, performance by the plaintiff, breach by the defendant, and resulting damages incurred by the plaintiff. *Scott v. Sebree*, 986 S.W.2d 364, 372 (Tex. App.—Austin 1999, pet. denied). Here, assuming Ferretti breached the contract, Watson has not proved that he performed under the contract, nor has he presented evidence of injury he suffered as a result of Ferretti's breach or explained what damages he has sustained. *See id.* at 373. Indeed, Watson does not seem to urge that he was entitled to damages for breach of contract, although he does seek attorney's fees. Instead, he urges that Ferretti's alleged breach excused Watson's later breach and asserts that he did not treat the contract as continuing.

As stated by the supreme court in *Dobbins v. Redden*, a case relied on by Watson, "It is a well established rule that 'a party to a contract who is himself in default cannot maintain a suit for its breach.'" 785 S.W.2d 377, 378 (Tex. 1990) (quoting *Gulf Pipe Line Co. v. Nearen*, 138

10

S.W.2d 1065, 1068 (Tex. 1940)). It was Watson who sued, asserting breach of contract after he himself defaulted on his contractual duties. We believe the rule quoted above applies to Watson as much as it does to Ferretti. After closing, when the alleged "breach" occurred, Watson and Ferretti both performed under the contract as if it were continuing and Watson collected rent and exercised control over the property. Watson's breach was in his conscious decision not to pay the taxes despite a contractual obligation to do so. Ferretti's "breach" was in the nature of a mutual mistake and was not discovered by the parties until after Watson's default.

Parties to a mutual mistake may be relieved of their contractual responsibilities. *See A.L.G. Enters. v. Huffman*, 660 S.W.2d 603, 606 (Tex. App.—Corpus Christi 1983), *aff'd as modified*, 672 S.W.2d 230 (Tex. 1984). However, once the error was discovered, Watson never sought to avoid the contract and instead sued to regain control over the properties. The evidence and Watson's pleadings demonstrate that he wanted the contract to be reformed and continue as reformed. *See Wallerstein v. Spirt*, 8 S.W.3d 774, 781 (Tex. App.—Austin 1999, no pet.) (reformation is available to correct mutual mistake). Thus, even assuming that the title company's mistake, of which neither party was aware, could be interpreted as a breach by Ferretti, Watson's later default was not excused by Ferretti's undiscovered earlier breach. *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982) ("A party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part. . . . At all times during the dispute and subsequent litigation, GAB chose to treat the contract as continuing. . . . Moreover, GAB did not pursue its excuse remedy until it had already instituted action to enforce the contract, well over a year after Hanks' breach of the covenant not to compete.").

11

As Watson points out, mutual mistake is not a defense to a breach of contract claim but rather is an equitable ground for rescission. *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 902 S.W.2d 488, 500 (Tex. App.—Austin 1993), *rev'd in part on other grounds*, 908 S.W.2d 415 (Tex. 1995). Under these facts, the trial court did not err in agreeing that Ferretti was a party to a mutual mistake and in concluding that the mistake did not amount to a breach of contract on Ferretti's part that would excuse Watson's failure to meet his contractual obligations.

*Did the Error Amount to Statutory Fraud?*

In his second issue, Watson asserts that Ferretti committed statutory fraud and that Watson was thus excused from the agreement. Although Watson agrees that the omission in the legal description was a mutual mistake and the result of the title company's error, he argues that Ferretti committed statutory fraud by misrepresenting the property conveyed through the real estate contract, an aerial photograph of the property, and a list of tenants, which induced Watson to go through with the real estate contract and buy the property. Watson asserts that he was damaged by this misconveyance, but does not elaborate on what those damages were. In lieu of damages, Watson argues he was entitled to specific performance.

In a real estate transaction, a person commits statutory fraud if (1) he makes a false representation of a past or existing material fact, (2) to a person for the purpose of inducing that person to enter into the contract, and (3) the person relies on the misrepresentation in entering into the contract. Tex. Bus. & Com. Code Ann. § 27.01(a)(1) (West 2002). If the alleged fraud is an unfulfilled promise to do something in the future, the false promise must be made with an intention

12

not to fulfill it. *Id*. § 27.01(a)(2); *National Resort Communities, Inc. v. Holleman*, 594 S.W.2d 195, 196 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.).

Watson is correct that intent is not usually a necessary element in a statutory fraud suit. *See Fletcher v. Edwards*, 26 S.W.3d 66, 77 (Tex. App.—Waco 2000, pet. denied) (knowledge of falsity of representation is not necessary in statutory fraud action). However, the parties agree that the error in this case was a mutual mistake, and therefore any claim for statutory fraud must fail. *See Denman v. Stuart*, 176 S.W.2d 730, 732 (Tex. 1944) ("mutual mistake precludes the existence of" statutory fraud, citing section 27.01's predecessor statute); *Speer v. Pool*, 210 S.W.2d 423, 427 (Tex. Civ. App.—El Paso 1947, no writ); *Moss-Tate Inv. Co. v. Owens*, 22 S.W.2d 1096, 1097 (Tex. Civ. App.—Dallas 1929, writ ref'd). Further, although Watson attempts to frame as fraud Ferretti's use of the real estate contract and illustrative exhibits to induce Watson into completing the transaction, this would imply that Ferretti induced Watson into going through with the closing by promising through the contract to convey all of the contemplated property in the future at closing. Watson does not argue, much less show, that Ferretti made that representation with the intention of not conveying all of the property. *See* Tex. Bus. & Com. Code Ann. § 27.01(a)(2); *Holleman*, 594 S.W.2d at 196.

The trial court did not err in finding that Ferretti did not commit statutory fraud. We overrule Watson's second issue on appeal.

*Did the Error Excuse Any Default or Invalidate the Contract?*

In his third issue, Watson contends that the promissory note and deed of trust were the result of a mistake and invalid. Watson urges that the promissory note and deed of trust were invalid because they were the result of a mutual mistake. He argues that the trial court should have

13

applied the rule that a contract may be avoided if the parties made a mutual mistake. *See Great Am. Ins. Co.*, 902 S.W.2d at 499-500. However, after the error came to light, Watson never asked Ferretti to rescind the contract. Instead, he demanded a reformed deed and attempted to negotiate the reformation and continuance of the contract. In his pleadings, Watson pleaded mutual mistake but never argued that the contract was invalid or void and never sought rescission. Instead, Watson argued that if Ferretti were allowed to foreclose upon the property, Watson would "lose the benefit of [his] bargain," and requested reformation of the documents.

Watson may not seek and be granted equitable relief in the form of reformation and also seek to avoid the contract and its responsibilities. Watson could have sought to invalidate the contract, but instead he opted for reformation. By that choice, Watson elected reformation as a remedy instead of rescission.[2] *See Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex. 1980) (election-of-remedies doctrine applies if party exercises informed choice between inconsistent remedies, rights, or states of facts). We overrule Watson's third issue on appeal.

*Was Ferretti Entitled to Accelerate the Note?*

In his fifth issue, Watson argues that Ferretti had no right to accelerate the debt because Ferretti did not give Watson notice of an intent to accelerate the note. Watson further argues

---

[2] Watson cites *Hampton v. Minton*, 785 S.W.2d 854 (Tex. App.—Austin 1990, writ denied), to support his arguments that his default was excused by Ferretti's earlier breach and that his seeking reformation should not bar him from asserting his other defenses. In *Hampton*, the buyer argued that his default did not excuse the seller's failure to make payments to the prior owner, resulting in that party's foreclosure on the property. *Id*. at 857. The court held that the seller's obligation to perform was excused by the buyer's prior breach. *Id*. at 857-58. The buyer then argued that the seller waived her excuse by seeking specific performance, not rescission. *Id*. at 858. The court held that the seller had not conclusively indicated an intention to keep the contract alive. *Id*.

that the waiver clause contained in the real estate note is ambiguous and therefore should not be relied upon to permit acceleration absent notice.

Acceleration of a debt is a harsh remedy that will be enforced only if the circumstances warrant it. *American Bank of Waco v. Waco Airmotive, Inc.*, 818 S.W.2d 163, 172 (Tex. App.—Waco 1991, writ denied) (quoting *Brown v. Avemco Inv. Corp.*, 603 F.2d 1367, 1376 (9th Cir. 1979)). Once a creditor provides proper notice that a debt has been accelerated, a debtor no longer has the right to cure his default. *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 234 (Tex. 1982). Generally, a creditor may not accelerate a loan before first demanding cure of the default and giving notice of an intent to accelerate. *Id.* at 233; *see Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 892 (Tex. 1991). However, a debtor may expressly waive his right to notice of an intent to accelerate. *Shumway*, 801 S.W.2d at 892-93; *Phillips v. Allums*, 882 S.W.2d 71, 73-74 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

The lien note included a provision waiving Watson's right to notice of an intent to accelerate, but Watson argues the waiver was vague and unenforceable. The note provided:

> If Maker [Watson] defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to it, and the default continues after Payee [Ferretti] gives Maker notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Payee may declare the unpaid principal balance and earned interest on this note immediately due. *Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, [and] notices of acceleration of maturity, . . . to the extent permitted by law.*

(Emphasis added.) Watson asserts that the waiver sentence is ambiguous when read in conjunction with the preceding sentence, which requires notice of default and a time to cure as required by law

or other agreement. He argues that the provision as a whole may be read as requiring Ferretti to provide all notices "required by law, general waiver notwithstanding," and that therefore the provision cannot be read as a clear and unambiguous waiver of Watson's right to receive notice of an intent to accelerate. We disagree.

The right to receive notice of default and time to cure is separate from the right to receive notice of an intent to accelerate. *See Shumway*, 801 S.W.2d at 893-94 (waiver provision must state specifically and separately which rights are waived). The clause "as may be required by law or written agreement" clearly refers only to Watson's right to receive notice of default and time to cure, meaning that Ferretti was to notify Watson of a default and how long he had to cure the default. Ferretti complied with those requirements on February 6, when he sent Watson notice of his failure to pay the taxes and told him he had ten days to cure. In the following sentence, Watson agreed to waive his right to receive notice of Ferretti's intent to accelerate if Watson failed to cure his default upon receiving notice.

The real estate lien note provides that, in the event of default, Watson "waive[d] all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration, protests, and notices of protest." That provision is a specific and unambiguous waiver of Watson's right to receive notice of Ferretti's intent to accelerate, and such waivers are valid and enforceable. *See id*. Ferretti provided Watson with notice of his default, what he had to do to cure the default, and a deadline to cure. *See Hunt v. Jefferson Sav. & Loan Ass'n*, 756 S.W.2d 762, 764 (Tex. App.—Dallas 1988, writ denied). Under the lien note, Ferretti was not required to give notice of his intent to accelerate the note. Ferretti thus complied with the requirements of the

16

deed of trust and other contractual documents. The trial court did not err in finding that Watson waived his right to notice of Ferretti's intent to accelerate. We overrule Watson's fifth issue.

Throughout his arguments, Watson asserts that Ferretti should not be allowed to rely on the mutual mistake as a defense because Ferretti held the reformed deed "hostage" and refused to provide corrected documents unless Watson agreed to forego his rights to seek injunctive relief. However, any conditioned offers by Ferretti occurred after the mistake was discovered while Watson's lawsuit, filed March 27, was pending and after Watson's default and Ferretti's decision to accelerate the note. Once Watson failed to cure his default within ten days and Ferretti decided to accelerate, Watson lost any right to cure his default later, *see Ogden*, 640 S.W.2d at 234, and Ferretti's holding the reformed deed "hostage" was of no real effect. In other words, after acceleration, Watson had no right to insist that he be allowed to repay Ferretti and continue the contract under the reformed deed. Therefore, any reluctance to provide a corrected deed has no bearing on whether Ferretti committed fraud at the inception of the contract or breached the contract.

*Is Watson Entitled to Equitable Relief?*

In his sixth and final issue, Watson argues that the trial court abused its discretion in denying Watson equitable relief.

Equity may protect a debtor from acceleration if the default is the result of accident, mistake, or the creditor's inequitable conduct. *See American Bank of Waco*, 818 S.W.2d at 172 (quoting *Brown*, 603 F.2d at 1376); *Davis v. Pletcher*, 727 S.W.2d 29, 35-36 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.). Here, the tax-related default was not the result of mistake, accident, or any inequitable conduct on Ferretti's part. Watson assumed he could pay the taxes late, relying

on his past experience with other properties. However, he acknowledged that he knew the taxes were not paid on time. The fact that the taxing authority allowed a grace period of several months does not mean that the taxes were not delinquent as of February 1.

The evidence shows that Watson offered to reimburse Ferretti for the taxes and other costs paid by Ferretti and that neither party received the fourth tax notice. Watson also stated that if Ferretti had said that he intended to pay the taxes and accelerate the note, Watson would have taken steps to avoid any default. The title error, the missing tax notice, and Watson's offers might cast doubt on whether the harsh remedy of acceleration was appropriate in this case. However, Watson received notice that the taxes were due, admitted receiving three of the four notices, and twice received notice from Ferretti that he was required to provide proof of the tax payments. Watson not only failed to pay any of the taxes by the January 31 due date, he failed to pay them by February 21 and never communicated with Ferretti about his financial situation or that he was planning to pay the taxes late.[3] Watson received notice of his default and failed to cure it within ten days. Once Ferretti sent Watson notice that the debt had been accelerated, Watson lost any further right to cure his default. *See Ogden*, 640 S.W.2d at 234. We cannot hold that the trial court erred in concluding that Watson was not entitled to equitable relief from acceleration after ignoring Ferretti's notices related to taxes and sitting quietly for nearly a month after the due date. We overrule Watson's sixth issue.

---

[3] Watson believes Ferretti only sought to accelerate the note because Watson raised the rent on the property against Ferretti's wishes. Whatever Ferretti's motives, he was within his contractual rights to accelerate the note.

## Conclusion

Having overruled all of Watson's issues on appeal, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear:  Opinion by Justice Puryear;
Dissenting Opinion by Justice Patterson

Affirmed

Filed:   June 23, 2005